MAURIZIO A. MANGINI, Esq., Bar #158432
**LAW OFFICES OF MAURIZIO A. MANGINI**
**2424 Vista Way, Suite 200**
Oceanside, CA 92054
Tel: 760-722-7567
Email: mmangini@northcountylaw.com

SUZANNE SKOLNICK, Esq., Bar #211076
**SKOLNICK LAW, APLC**
2170 S. El Camino Real, #215
Oceanside, CA 92054
Telephone:  (760) 585-7092
Email:  suzanne@skolnicklawgroup.com
Attorneys for Plaintiffs Estate of Jose Ramon Cervantes Conejo; Guadalupe Conejo Ramirez

**LAW OFFICE OF JERRY L. STEERING**
Jerry L. Steering, Esq. (SBN 122509)
4063 Birch Street, Suite 100
Newport Beach, CA 92660
Telephone: (949) 474-1849
Email: jerry@steeringlaw.com

**LAW OFFICE OF GREGORY PEACOCK**
Gregory Peacock, Esq. (SBN 277669)
4063 Birch Street, Suite 100
Newport Beach, CA 92660
Telephone: (949) 292-7478
Email: gregorypeacockesq@gmail.com
Attorneys for Plaintiffs Maritza Benitez and Jose Alberto Quintero

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF JOSE RAMON CERVANTES CONEJO by and through its Substituted Successor-In-Interest, FABIAN CERVANTES GARCIA; GUADALUPE CONEJO RAMIREZ, individually<br><br>       Plaintiffs, | Case Nos.: 25-CV-01143 TWR (DDL), 25-CV-01823 TWR (DDL)<br><br>**FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>**(1)  Deliberate Indifference to Serious Medical Needs (42 U.S.C. §1983)** |

v.

COUNTY OF SAN DIEGO; PAUL MATA; DANA CASTLEBERRY; NHI NGOC DAI; JAIME PREECHAR, RN; NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; CITY OF ESCONDIDO; JAMES ALBERGO; NOMINAL DEFENDANT MARITZA BENITEZ; NOMINAL DEFENDANT JOSE ALBERTO QUINTERO; and DOES 1-50, Inclusive,

    Defendants.

_____

MARITZA BENITEZ, individually and as successor-in-interest to Decedent JOSE RAMON CERVANTES CONEJO; and JOSE ALBERTO QUINTERO, individually and as successor-in-interest to Decedent JOSE RAMON CERVANTES CONEJO,

    Plaintiff,

    vs.

COUNTY OF SAN DIEGO; CITY OF ESCONDIDO; JAMES ALBERGO; PAUL MATA; DANA CASTLEBERRY; NHI NGOC DAI; NAPHCARE, INC.; NAPHCARE OF SAN DIEO, LLC; and DOES 1 through 50, inclusive,

    Defendants

_____

**(2)**   **Right of Familial Association (42 U.S.C. § 1983)**

**(3)**   **Deprivation Of Life Without Due Process Of Law (Violation Of 42 U.S.C. § 1983)**

**(4)**   **Failure to Properly Train and Supervise Monell/Municipal Liability)**

**(5)**   **Failure to Properly Train and Supervise Monell/Municipal Liability)**

**(6)**   **Successor-in-Interest Claims and Personal Liability Claims for Municipal Liability (Monell Liability[1]), via Failure to Train**

**(7)**   **Failure to Train and Supervise (Supervisory DOES 1-4)**

**(8)**   **Failure to Properly Train and Supervise (Supervisory DOES 5-9)**

**(9)**   **Successor-in-Interest Claims and Personal Liability Claims for Municipal (Monell) Liability via Policy Created By Longstanding Custom & Practice & Failure to Protect Inmates and Failure to Discipline Jail Personnel**

**(10)**  **Wrongful Death (CCP § 377.60)**

[1] *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

FIRST AMENDED CONSOLIDATED COMPLAINT

2

**(11)  Negligence Cal. Civil Code § 1714**

**(12)  Violation of Cal. Civ. Code § 52.1 – Bane Act Survival Claim**

**(13)  Medical Negligence**

**(14)  Violation of Cal. Gov't Code § 845.6 (Failure Render / Obtain Immediate Medical Care[2])**

**UNITED STATES DISTRICT JUDGE TODD W. ROBINSON**

**JURY TRIAL DEMANDED**

**COME NOW** the Estate Of Jose Ramon Cervantes Conejo by and through its successor-in-interest Fabian Cervantes Garcia and Guadalupe Conejo Ramirez, by their attorneys of record, Maurizio Mangini, Esq., Law Offices of Maurizio Mangini and Suzanne Skolnick, Esq., Skolnick Law, APLC; and Maritza Benitez and Jose Alberto Quintero, individually, and as successor-in-interest, to decedent Jose Ramon Cervantes Conejo, by their attorneys of record Jerry L. Steering of the LAW OFFICE OF JERRY L. STEERING and Gregory Peacock, of the LAW OFFICE OF GREGORY PEACOCK, and allege and complain as follows:

---

[2] Subject to Motion for Reconsideration and Subject to new California Government Claim for Damages based on newly discovered evidence.

# I.    INTRODUCTION

Jose Ramon Cervantes Conejo ("Mr. Conejo") was 43 years old at the time of his death. After being arrested by Escondido Police Department for being drunk in public, he was booked into the Vista Detention Facility ("VDF") on March 28, 2024, at 9:57 p.m..

Jail medical records indicate Mr. Conejo entered the Vista jail with no signs of a head injury. At the time Mr. Conejo entered VDF jail staff and the arresting Escondido Police Department police officer, defendant James Albergo knew that he was acutely intoxicated from ethanol, was experiencing alcohol withdrawal symptoms and had a history of seizures. The Jail staff knew that due to his condition he required anti-seizure medications, close supervision and a low bunk for his safety. While Mr. Conejo was in VDF's medical intake area at 10:18 p.m. on March 28, 2024, he lost consciousness while seated upright and fell off the bench, his head violently striking the concrete floor. He remained motionless on the floor of the medical screening for booking area / booking area of the VDF for approximately 10 seconds after the fall.  Two jail medical staff were present in the room when the incident occurred along with other witnesses, as well as the Escondido Police Department Officer, DOE 36 who brought Mr. Conejo to VDF, and who saw Mr. Conejo fall to the floor and fracture his skull in his immediate presence.  Despite obvious signs of a concussion requiring immediate transfer to the hospital, Escondido Police Department Officer DOE 36, and the other medical staff did nothing, and allowed Mr. Conejo to be booked into VDF.

Between 10:46  p.m. on March 28, 2024 and 1:25 p.m. on March 29, 2024, Mr. Conejo suffered at least one and likely more falls while in his cell at VDF.

Approximately three and a half hours after entering his cell, after receiving no anti-seizure medications or adequate supervision or housing to protect Mr.

Conejo from serious injury, Mr. Conejo was found on the floor of his cell with severe head injuries, including a skull fracture, orbital wall fracture and bilateral brain bleeds.

VDF employees reported to Mr. Conejo's emergency physicians that his mechanism of injury was "rolling" off a bench in his cell, but failed to inform physicians that he had struck his head directly on the concrete floor of the medical screening for booking area / booking area of the VDF before ever being housed in a cell, or that while housed in the cell he then had at least one or possibly more falls with head injuries.

Mr. Conejo's doctors at Palomar Medical Center deemed the magnitude of his injuries as incompatible with, and out of proportion to a single fall caused by "rolling" off a bench.  Mr. Conejo later succumbed to his injuries and died at Palomar Medical Center on April 12, 2024.

Twenty-two months have passed since Mr. Conejo's death and the County of San Diego and its agency, the San Diego County Medical Examiner, have still not produced to plaintiffs the medical examiner's report which plaintiffs are informed and believe remains "pending".

All allegations in this First Consolidated Amended Complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  Whenever allegations in this complaint are contrary or inconsistent, such allegations shall be deemed alternative.

Moreover, although this Honorable Court previously dismissed with prejudice the plaintiffs' allegations of and claims for failure to provide immediate medical care to Mr. Conejo pursuant to F.R.Civ.P. 12(b)(6), the disclosures made

to plaintiffs by defendant County of San Diego put plaintiffs on notice for the first time of facts that squarely support that claim pursuant to Cal. Gov't Code § 845.6.

Plaintiffs will be making a California Government Claim for Damages against defendant County of San Diego and defendant City of Escondido for those Municipal Entities' failure to provide immediate medical care to Mr. Conejo, and pursuant to a Motion for Reconsideration to this Honorable Court, based on this newly discovered evidence of Mr. Conejo's falls in the VDF Jail; evidence that with reasonable diligence could not have been discovered by the plaintiffs at an earlier time.

## II.    GENERAL ALLEGATIONS
## <u>JURISDICTION</u>

1.    As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1367.

2. As the incidents complained of in this action occurred in the County of San Diego, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

3. As Plaintiffs' claims brought under California state law arise out of the same transactions and occurrences, and out of a common nucleus of operative facts as the Plaintiffs' federal question claims, this court has jurisdiction over the Plaintiffs' California State law claims under its supplemental jurisdiction under 28 U.S.C. § 1367, and otherwise pursuant to *Mine Workers v. Gibbs*.

4.    The Garcia/Ramirez plaintiffs[3] timely filed their California

_____

[3] Plaintiffs THE ESTATE OF JOSE RAMON CERVANTES CONEJO by and through its Substituted Successor-In-Interest, FABIAN CERVANTES GARCIA and GUADALUPE CONEJO RAMIREZ (Individually).

Government Claims for Damages with defendant County of San Diego on September 21, 2024, and defendant County of San Diego denied those Claims on November 5, 2024. In addition, plaintiff Martiza Benitez, individually and as successor-in-interest, on behalf of herself and on behalf of Jose Alberto Quintero filed said plaintiffs' California Government Claim for Damages against the County of San Diego on September 26, 2024, and that claim was denied by the County of San Diego on November 5, 2024. In addition, plaintiff Martiza Benitez, individually and as successor-in-interest, on behalf of herself and on behalf of Jose Alberto Quintero filed said plaintiffs' California Government Claim for Damages against the City of Escondido on September 26, 2024. The City of Escondido denied said plaintiffs' claims on November 15, 2024.

## **PARTIES**

5.     At all times relevant to this complaint, decedent JOSE RAMON CERVANTES CONEJO ("Decedent") was an individual residing in San Diego County, California.

6.     Plaintiff FABIAN CERVANTES GARCIA ("Mr. Garcia") is an adult, Decedent's only natural born son, and an heir and beneficiary of the ESTATE OF JOSE RAMON CERVANTES CONEJO (hereafter the "ESTATE").  Mr. Garcia substituted himself as Successor-in-Interest to the ESTATE OF JOSE RAMON CERVANTES CONEJO in place of the ESTATE'S prior Successor-In-Interest, GUADALUPE CONEJO RAMIREZ.  FABIAN CERVANTES GARCIA  brings this action in his capacity as the substituted Successor-in-Interest to the ESTATE OF JOSE RAMON CERVANTES CONEJO for CONEJO's survival damages.

7.     Mr. Garcia is informed and believes and based thereon alleges that: at the time of Decedent's death, Mr. Garcia was the only child of Decedent and that Decedent died without a will or other testamentary document; Decedent and his alleged spouse Maritza Benitez ("Mrs. Benitez") were separated since at least

October 2022 and were living separately at the time Decedent sustained the injuries and damages alleged herein; that no proceeding for the administration of the ESTATE is now pending; that no other person has a superior right to commence the action on behalf of the ESTATE and that Mr. Garcia qualifies under California law as a successor-in-interest to the ESTATE and the proper party to be substituted in place of Guadalupe Conejo Ramirez as Successor-In-Interest to the ESTATE, and as such, succeeds to Decedent's interests, claims, and causes of action.  An Affidavit of Heirship signed under penalty of perjury by Mr. Garcia is attached as **Exhibit 1.**

8.    Plaintiff GUADALUPE CONEJO RAMIREZ ("Mrs. Ramirez") is the surviving parent of plaintiffs' decedent. Mrs. Ramirez is informed and believes and based thereon alleges that: at the time of Decedent's death Decedent died without a will or other testamentary document; that Decedent and his alleged spouse Maritza Benitez ("Mrs. Benitez") were separated since at least October 2022 and were living separately at the time Decedent sustained the injuries and damages alleged herein.  Plaintiffs Guadalupe Conejo Ramirez and Fabian Cervantes Garcia as Successor-In-Interest to the Estate of Jose Ramon Cervantes Conejo (hereafter "Garcia/Ramirez Plaintiffs") allege that Nominal Defendant MARITZA BENITEZ ("BENITEZ") is a competent adult and is being sued as a Nominal Defendant as she is actually a necessary plaintiff potentially entitled to recover damages for the wrongful death of Decedent pursuant to C.C.P. §377.60(a) as she was the estranged alleged spouse of Decedent and was living separately from Decedent at the time of Decedent's death.

9.  Plaintiff Maritza Benitez shows that she was married to Decedent at the time of his death.

10. Mrs. Ramirez was financially dependent on Decedent at the time of his death and Decedent regularly contributed money toward her necessities of life.

11.    GUADALUPE CONEJO RAMIREZ shared a close relationship and

special bond with her son, Decedent, JOSE RAMON CERVANTES CONEJO, which included deep attachments, commitments, and distinctively personal aspects of their lives that were typical of a close familial relationship.

12.    GUADALUPE CONEJO RAMIREZ communicated with Mr. Conejo frequently and received his love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support prior to his death. GUADALUPE CONEJO RAMIREZ raised Decedent and had personal and private associations with Decedent prior to his death.

13.    Prior to his death GUADALUPE CONEJO RAMIREZ enjoyed having conversations with Decedent and Decedent frequently expressed his love and affection for his mother GUADALUPE CONEJO RAMIREZ.

14.    Upon learning that Decedent was hospitalized, GUADALUPE CONEJO RAMIREZ visited and remained with Decedent at his hospital bedside, prayed for him, spoke to him, and gave him her love, comfort and companionship up to the moment of his death.

15.    Plaintiff GUADALUPE CONEJO RAMIREZ brings this action in her individual capacity for the loss of her son JOSE RAMON CERVANTES CONEJO. Mrs. Ramirez hereby consents to Plaintiff FABIAN CERVANTES GARCIA being substituted into this action in place of herself as Successor-In-Interest to the ESTATE OF JOSE RAMON CERVANTES CONEJO.

16.    Plaintiff Maritza Benitez, (hereinafter referred to as "BENITEZ") is a natural person, who, at all times complained of in this action, resided in the County of San Diego, State of California. BENITEZ alleges she is also the legal and natural spouse of plaintiffs' decedent Jose Ramon Cervantes Conejo ("Mr. Conejo").

17.    BENITEZ sues in her individual capacity as the spouse of Jose Ramon Cervantes Conejo and also as successor in interest to Jose Ramon

Cervantes Conejo. BENITEZ seeks both survival and wrongful death damages under federal and state law.

18.    Defendant COUNTY OF SAN DIEGO (hereafter "COUNTY") is a public entity, duly organized and existing under the laws of the State of California. The San Diego County Sheriff's Office is an agency of defendant County of San Diego, operating under the COUNTY's authority.

19.    The San Diego County Sheriff's Office owns, operates, and manages the Vista Detention Facility ("VDF") and is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures, practices/customs of VDF, and its respective employees, contractors and/or agents who staff VDF.

20.    At all times relevant to this complaint, defendant PAUL MATA ("MATA") was a registered nurse employed by the County of San Diego and/or a Contractor of the County responsible for the medical assessment of incoming inmates at VDF and completing the medical clearance intake forms prior to the inmates' admission. MATA was responsible for Mr. Conejo's initial screening, assessment, follow-up assessments and referrals for further treatment. At all times complained of MATA was acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant COUNTY.

21.    At all times relevant to this complaint, Defendant DANA CASTLEBERRY ("CASTLEBERRY") was a registered nurse employed by the County of San Diego and/or a Contractor of the County responsible for medical assessments and referrals for further treatment of inmates at VDF. At all times complained of MATA was acting as an individual person under the color of state law, in her individual capacity, and was acting in the course of and within the scope of her employment with defendant COUNTY.

FIRST AMENDED CONSOLIDATED COMPLAINT

3

22.    At all times relevant to this complaint, Defendant NHI NGOC DAI ("DAI") was a Physician Assistant employed by the County of San Diego and/or a Contractor of the County, including Naphcare, Inc., and/or Naphcare of San Diego, LLC, responsible for medical assessments and referrals for further treatment of inmates at VDF. At all times complained of DAI was acting as an individual person under the color of state law, in her individual capacity, and was acting in the course of and within the scope of her employment with defendant COUNTY and/or a Contractor of the County, including Naphcare, Inc., and/or Naphcare of San Diego, LLC.

23.    Defendant City of Escondido, hereinafter also referred to as "CITY", is a municipal entity located in the State of California; within the territorial jurisdiction of this court. The Escondido Police Department is a department and agency of defendant CITY.

24.    Defendant James Albergo, hereinafter also referred to as "ALBERGO", is, and at all times complained of herein, was, a peace officer and a police officer employed by the Escondido Police Department, and was acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

25.    At all times relevant to this complaint, defendant NAPHCARE, INC., was the third-party contractor who employed, supervised, and trained the medical staff at VDF.

26.    Plaintiff is informed and believes and based thereon alleges that under defendant NAPHCARE, INC.'s contract with COUNTY, NAPHCARE, INC. was required to have its employees/agents be trained in and follow National Commission of Correctional Healthcare ("NCCHC") Standards in providing medical care to inmates housed at VDF.

FIRST AMENDED CONSOLIDATED COMPLAINT

4

27.    The NCCHC Standards require that individuals experiencing severe, life-threatening intoxication or withdrawal are to be transferred immediately to a licensed acute care facility and that individuals at risk for progression to more severe levels of intoxication or withdrawal are to be kept under constant observation by qualified health professionals or health-trained correctional staff.

28.    At all times relevant to this complaint, defendant NAPHCARE SAN DIEGO, LLC was the third-party contractor who employed, supervised, and trained medical staff at VDF.

29.    As shown above, plaintiff is informed and believes and based thereon alleges that under defendant NAPHCARE SAN DIEGO, LLC's contract with COUNTY, NAPHCARE SAN DIEGO, LLC was required to have its employees/agents be trained in and follow National Commission of Correctional Healthcare ("NCCHC") Standards in providing medical care to inmates housed at VDF.

30.    The NCCHC Standards require that individuals experiencing severe, life-threatening intoxication or withdrawal are to be transferred immediately to a licensed acute care facility and that individuals at risk for progression to more severe levels of intoxication or withdrawal are to be kept under constant observation by qualified health professionals or health-trained correctional staff.

31.    Upon information and belief, NAPHCARE OF SAN DIEGO, LLC is the alter ego of NAPHCARE, INC., is not separately capitalized, and does not observe corporate formalities.

32.    At all times relevant to this complaint, defendants DOES 1 through 4, inclusive, supervised the medical and nursing staff employed by the County of San Diego and/or a Contractor of the County at VDF, and oversaw the development and implementation of quality assurance and utilization review policies and procedures.

33.    Defendant DOE 1 supervised MATA, CASTLEBERRY and PREECHAR during the evening Mr. Conejo was at VDF from March 28, 2024 through March 29, 2024.

34.    Moreover, at all relevant times, DOE 1 was and is a duly appointed San Diego County Sheriff's Office ("SDSO") physician, nurse practitioner, nurse, managerial, supervisorial, and/or policymaking employee of COUNTY.

35.    At all relevant times, DOE 1 was subject to the oversight and supervision of defendant COUNTY and the SDSO, and defendant COUNTY and SDSO's elected and non-elected officials.

36.    At all relevant times, DOE 1 acted under color of state law, and within the course and scope of his/her employment with COUNTY and the SDSO .

37.    Defendant DOE 1 caused various injuries herein by integrally participating, or failing to intervene in the incidents as described herein, by failing to train and failing to supervise, and by engaging in other acts and/or omissions.

38.    Defendant DOE 1 was acting with the complete authority of his/her employer and principal, COUNTY. Upon information and belief, DOE 1 was and is at all relevant times a resident of this judicial district and/or committed the tortious actions and constitutional violations complained of in this action in San Diego County.

39.    Defendant DOE 2 was the person designated by defendant COUNTY to train and supervise VDF medical staff in understanding, implementing and complying with both San Diego County jail policies and procedures, and with NCCHC standards relating to the provision of medical care and medical monitoring of seriously ill inmates within San Diego County jails, including VDF.

40.    At all relevant times, defendant DOE 2 was and is a duly appointed employee and agent of COUNTY.  At all relevant times defendant DOE 2 was subject to the oversight and supervision of COUNTY and SDSO, and COUNTY and SDSO 's elected and non-elected officials.

41.     At all relevant times defendant DOE 2 acted under color of state law, and within the course and scope of his/her employment with COUNTY and SDSO , including when tasked with the responsibility to provide training and supervision of medical staff in their duties toward pre-trial detainees.

42.     Defendant DOE 2 was responsible for ensuring that NCCHC standards related to alcohol withdrawal treatment, head injury treatment and medical monitoring of inmates experiencing alcohol withdrawal and/or head injuries were followed by all medical staff, including MATA, CASTLEBERRY, and PREECHAR.

43.     Defendant DOE 2 caused various injuries herein by integrally participating, failing to intervene in the incidents as described herein, by failing to train and failing to supervise said jail staff, said jail medical staff and otherwise said DOE defendants, by engaging in other acts and/or omissions.

44.     Upon information and belief, defendant DOE 2 was and is at all relevant times a resident of this judicial district and/or committed the tortious action and constitutional violations complained of in this action in the County of San Diego or otherwise within the territorial jurisdiction of this Honorable Court.

45.     Defendant DOE 3 supervised DAI during the evening Mr. Conejo was at VDF, from March 28, 2024 through March 29, 2024.

46.     At all relevant times complained of herein, defendant DOE 3 was and is an employee/agent of NAPHCARE, INC. and/or NAPHCARE OF SAN DIEGO, LLC.

47.     At all relevant times defendant DOE 3 was subject to the oversight and supervision of NAPHCARE, INC. and/or NAPHCARE OF SAN DIEGO, LLC, and/or COUNTY and/or the SDSO .

48.     At all relevant times defendant DOE 3 acted under color of law, and within the course and scope of his/her employment with NAPHCARE, INC. and/or NAPHCARE OF SAN DIEGO, LLC and/or COUNTY and/or SDSO.

FIRST AMENDED CONSOLIDATED COMPLAINT

49.     Defendant DOE 3 caused various injuries herein by integrally participating, failing to supervise, failing to train, and/or failing to intervene in the incidents as described herein, and by engaging in other acts and/or omissions complained of herein.

50.     Defendant DOE 3 was acting with the complete authority of his/her principal, NAPHCARE, INC., and/or NAPHCARE OF SAN DIEGO, LLC and/or with the authority and permission of COUNTY.

51.     Defendant DOE 4 was the employee/agent of COUNTY and/or NAPHCARE, INC., and/or NAPHCARE OF SAN DIEGO, LLC, and/or other unknown third-party contractors of COUNTY, and was responsible for supervising and training medical staff at VDF, including ensuring that all medical staff working at VDF were implementing and complying with both jail policies and procedures and NCCHC standards relating to the provision of medical care and medical monitoring of seriously ill inmates within San Diego County jails.

52.     At all relevant times complained of herein, defendant DOE 4 was subject to the oversight and supervision of COUNTY and SDSO and COUNTY and SDSO's elected and non-elected officials, NAPHCARE, INC., or NAPHCARE OF SAN DIEGO, LLC, or other unknown third-party contractors and/or employees/agents of COUNTY.

53.     At all relevant times defendant DOE 4 acted under color of state law, and within the course and scope of his/her employment/agency with COUNTY and/or NAPHCARE, INC., and/or NAPHCARE OF SAN DIEGO, LLC and/or other unknown third-party contractors of COUNTY, including when tasked with the responsibility to provide training and supervision of medical staff in their duties toward pre-trial detainees.

54.     Defendant DOE 4 was responsible for ensuring that San Diego County jail policies and procedures as well as NCCHC standards related to alcohol withdrawal treatment, head injury treatment and medical monitoring of inmates

experiencing alcohol withdrawal and/or head injuries were followed by all medical staff.

55.    Defendant DOE 4 caused various injuries herein by integrally participating, failing to intervene in the incidents as described herein, by failing to train and failing to supervise, and by engaging in other acts and/or omissions complained of herein.

56.    At all times relevant to this complaint defendants DOES 5 through 9, inclusive, were supervisory employees or agents of defendant COUNTY responsible for training San Diego County jail staff on assigning appropriate housing and performing proper cell and inmate safety checks.

57.    Additionally, defendants DOE 5 was a SDSO deputy sheriff and/or Custodial Officer and/or Custodial Assistant and/or some other public officer or public employee who was employed by COUNTY and working as a custodial staff Supervisor at VDF on the night that Mr. Conejo was at VDF; from March 28, 2024 through March 29, 2024.

58.    Defendant DOE 5 was responsible for supervising San Diego County jail staff in their performance of cell safety checks on the night of the incident complained of in this action.

59.    At all relevant times, defendant DOE 5 acted under color of state law, and within the course and scope of his/her employment with COUNTY.

60.    Defendant DOE 5 caused various injuries herein by integrally participating, failing to intervene in the incidents as described herein, by failing to train and failing to supervise custodial staff, and by engaging in other acts and/or omissions complained of herein.

61.    Upon information and belief, DOE 5 was and is at all relevant times a resident of this judicial district and/or committed the tortious actions and constitutional violations complained of in this action.

62.    Defendant DOE 6 is/was a SDSO Deputy Sheriff and/or Custodial Officer and/or Custodial Assistant and/or some other public officer or public employee or other person who was employed by COUNTY, and working as a custodial staff Supervisor at VDF on the night Mr. Conejo was at VDF from March 28, 2024 through March 29, 2024.

63.    Defendant DOE 6 was responsible for supervising jail staff in their duties associated with assigning pre-trial detainees to housing suitable for their medical condition, including temporary housing on the night of the incident.

64.    At all relevant times, defendant DOE 6 acted under color of law, and within the course and scope of his/her employment with COUNTY.

65.    Defendant DOE 6 caused various injuries herein by integrally participating, failing to intervene in the incidents as described herein, by failing to train and failing to properly supervise the custodial staff at VDF, and by engaging in other acts and/or omissions complained of herein.

66.    Upon information and belief, defendant DOE 6 was and is at all relevant times a resident of this judicial district and/or committed the tortious actions and constitutional violations complained of in this action in the County of San Diego or otherwise within the territorial jurisdiction of this Honorable Court.

67.    Defendant DOE 7 was employed by COUNTY and was responsible for training deputies at VDF in conducting cell safety checks.

68.    At all relevant times defendant DOE 7 acted under color of state law, and within the course and scope of his/her employment with COUNTY.

69.    Defendant DOE 7 caused various injuries herein by failing to adequately train deputies at VDF in the performance of cell safety checks, in particular, cell safety checks of inmates suffering from alcohol withdrawal and head injuries, and by engaging in other acts and/or omissions.

70.    Upon information and belief, DOE 7 was and is at all relevant times a resident of this judicial district and/or committed the tortious action and

constitutional violations complained of in this action in the County of San Diego or otherwise within the territorial jurisdiction of this Honorable Court.

71.     Defendant DOE 8 was employed by COUNTY and was responsible for training deputies at VDF in assigning appropriate housing to inmates.

72.     At all relevant times defendant DOE 8 acted under color of state law, and within the course and scope of his/her employment with COUNTY.

73.     Defendant DOE 8 caused various injuries herein by failing to adequately train deputies at VDF in making housing assignments, in particular, housing assignments for inmates suffering from alcohol withdrawal and head injuries so that adequate monitoring of such inmates could occur, and by engaging in other acts and/or omissions.

74.     Upon information and belief, DOE 8 was and is at all relevant times a resident of this judicial district and/or committed the tortious actions and constitutional violations complained of in this action in the County of San Diego or otherwise within the territorial jurisdiction of this Honorable Court.

75.     Defendant DOE 9 was employed by COUNTY and was responsible for training custodial staff at all of the San Diego County Sheriff's Office run jails in performing cell safety checks and/or assigning appropriate housing to inmates.

76.     At all relevant times, defendant DOE 9 acted under color of law, and within the course and scope of their employment with COUNTY.

77.     Defendant DOE 9 caused various injuries herein by failing to adequately train and supervise jail custodial staff throughout the County of San Diego jails in performing cell safety checks and making appropriate housing assignments, in particular, housing assignments for inmates suffering from alcohol withdrawal and head injuries so that adequate monitoring of such inmates could occur, and by engaging in other acts and/or omissions.

78.     Upon information and belief, DOE 9 was and is at all relevant times a resident of this judicial district and/or committed the tortious action and

constitutional violations complained of in this action in the County of San Diego or otherwise within the territorial jurisdiction of this Honorable Court.

79.    At all times relevant to this complaint, defendants DOES 10 through 20, inclusive, were employees or agents of COUNTY and/or Contractor of the COUNTY at VDF, and were responsible for the care and custody of Mr. Conejo at VDF.

80.    Additionally, defendant DOE 10 was a male San Diego County Sheriff's Office deputy sheriff or Custodial Officer (exact rank unknown) who had a mustache and was wearing a baseball cap and who was present in the medical intake area with Mr. Conejo at 10:23 p.m. on March 28, 2024; approximately 5 minutes after Mr. Conejo struck fell and struck his head on the concrete floor of the Medical Clearance for Booking / Booking area of the VDF jail.

81.    Defendant DOE 10 entered the intake area at that time to supervise the clean-up of Mr. Conejo's bodily fluids off the floor.

82.    Defendant DOE 10 saw that Mr. Conejo was nauseous, and/or vomiting, intoxicated and going through withdrawal, in medical distress, and with facial bleeding.

83.    Defendant DOE 10 knew or reasonably should have known that Mr. Conejo had just suffered a head injury with a loss of consciousness while he was in the Medical Clearance for Booking / Booking area of the VDF jail, and that Mr. Conejo required immediate transfer to the hospital for emergency medical treatment.

84.    Defendant DOE 11 was a male San Diego County Sheriff's Office deputy sheriff or Custodial Officer (exact rank unknown) who was present in the Medical Clearance for Booking / Booking area of the VDF jail Mr. Conejo at 10:23 p.m. on March 28, 2024; which was approximately 5 minutes after Mr. Conejo struck his head on the concrete floor there.

85.    Defendant DOE 11 entered the medical intake area with DOE 10 in order to supervise the clean-up of Mr. Conejo's bodily fluids off the floor.

86.    Defendant DOE 11 saw that Mr. Conejo was nauseous, and/or vomiting, intoxicated and going through withdrawal, in medical distress, and with facial bleeding.

87.    Defendant DOE 11 knew or should have known that Mr. Conejo had just suffered a severe head injury with a loss of consciousness while he was in medical intake and that Mr. Conejo required immediate transfer to the hospital.

88.    At the time plaintiffs filed their original complaint, plaintiffs were truly ignorant of the true name and capacity of defendant DOE 12 and/or the specific facts giving rise to DOE 12's liability, and, therefore, sued DOE 12 by said fictitious name.

89.    On January 16, 2026, from defendants' disclosures in this case, plaintiffs learned for the first time that defendant DOE 12's true name is Jaime Preechar, RN.

90.    Accordingly, plaintiffs, and each of them, now substitute defendant DOE 12 with her true name, "JAIME PREECHAR, RN", wherever the defendant DOE 12 designation appears in this instant Complaint for Damages.

91.    At all times relevant to this complaint, defendant Jaime Preechar, RN ("PREECHAR") was a registered nurse employed by COUNTY and/or a Contractor of COUNTY responsible for the medical assessment / medical clearance for booking of incoming inmates at the VDF jail.

92.    PREECHAR was also responsible for Mr. Conejo's follow-up medical assessments, and for referrals for further medical treatment.

93.    PREECHAR was present in the Medical Clearance for Booking / Booking area of the VDF jail on March 28, 2024, at 10:18p.m. when Mr. Conejo struck his head on the concrete floor. PREECHAR was present in the room with

FIRST AMENDED CONSOLIDATED COMPLAINT

13

Mr. Conejo while Mr. Conejo's bodily fluids were being cleaned off the floor from where he fell and struck his head.

94. PREECHAR saw that Mr. Conejo was nauseous, and/or vomiting, highly intoxicated and going through ethanol withdrawal, in acute and severe medical distress, and with facial bleeding.

95. PREECHAR knew or should have reasonably known that Mr. Conejo had just suffered a serious head injury with a loss of consciousness while he was in the Medical Clearance for Booking / Booking area of the VDF jail, that he was highly intoxicated and that he was bleeding from his head being struck on the concrete floor of the Medical Clearance for Booking / Booking area of the VDF jail, and that Mr. Conejo required immediate transfer to the hospital for immediate medical attention and treatment.

96. Defendant DOE 13 was/is a male San Diego County Sheriff's Office deputy sheriff or Custodial Officer (exact rank unknown) who was responsible for physically placing Mr. Conejo in the jail cell at the VDF jail at approximately 10:46 p.m. on March 28, 2024 following his being taken from the Medical Clearance for Booking / Booking area.

97. Defendant DOE 13 knew that Mr. Conejo had been vomiting, was highly intoxicated and going through ethanol withdrawal, was in acute and severe medical distress, and had facial bleeding and poor balance.

98. Defendant DOE 13 knew or should have known that Mr. Conejo had just suffered a head injury with a loss of consciousness while he was in the Medical Clearance for Booking / Booking area that Mr. Conejo required immediate transfer to the hospital for immediate medical attention and treatment.

99. Defendant DOE 13 knew or should have known that the jail cell in which he placed Mr. Conejo was not appropriate for his obvious medical condition.

100. Defendant DOE 13 did not have Mr. Conejo sit down on the floor of

the cell to ensure his safety, despite knowing that Mr. Conejo had already suffered a head injury from falling off a bench in medical intake.

101.    Defendant DOE 14 was a male San Diego County Sheriff's Office deputy sheriff or Custodial Officer (exact rank unknown) who went into Mr. Conejo's cell at approximately 11:42p.m. on March 28, 2024.

102.    Defendant DOE 14 knew that Mr. Conejo had been vomiting, was Highly intoxicated and going through ethanol withdrawal, was in acute and severe medical distress, and had facial bleeding and poor balance.

103.    Defendant DOE 14 knew or should have known that Mr. Conejo had suffered a head injury with a loss of consciousness while he was in the Medical Clearance for Booking / Booking area of the VDF jail at 10:18 p.m., and that Mr. Conejo required immediate medical care and treatment and required immediate transfer to the hospital.

104.    Defendant DOE 14 spoke with CASTLEBERRY, who was also present at 11:42 p.m. outside of Mr. Conejo's jail cell, but who did not enter Mr. Conejo's cell to perform any type of medical assessment or examination of him, despite CASTLEBERRY having difficulty getting Mr. Conejo to respond to her from outside his cell.

105.    Plaintiffs are informed and believe and based thereon allege that defendant DOE 14 brought paper towels and/or toilet paper into Mr. Conejo's cell to clean up more of Mr. Conejo's bodily fluids.

106.    Defendant DOE 14 knew or reasonably should have known that Mr. Conejo had not taken or had been provided any medications to treat his obvious symptoms of ethanol (alcohol) withdrawal.

107.    Defendant DOE 14 knew or reasonably should have known that the cell in which Mr. Conejo was placed was not appropriate for his medical needs.

108.    By 11:45 p.m. on March 28, 2024, DOE 14, DOE 15, DOE 16 and

CASTLEBERRY left the area outside Mr. Conejo's cell and no one looked through the window of Mr. Conejo's cell again until 12:28 p.m. on March 28, 2024.

109.    Defendant DOE 15 was a male San Diego County Sheriff's Office deputy sheriff or Custodial Officer (exact rank unknown) who went into Mr. Conejo's cell at approximately 11:42 p.m. on March 28, 2024 with defendant DOE 16.

110.    Defendant DOE 15 knew that Mr. Conejo had been vomiting, was Highly intoxicated and going through withdrawal, was in acute and severe medical distress, and had facial bleeding and poor balance.

111.    Defendant DOE 15 knew or reasonably should have known that Mr. Conejo had suffered a head injury with a loss of consciousness while he was in the Medical Clearance for Booking / Booking area at 10:18 p.m., and that Mr. Conejo required immediate medical care and attention as well as an immediate transfer to the hospital.

112.    Plaintiffs are informed and believe and based thereon allege that defendant DOE 15 witnessed defendant DOE 14 bring paper towels and/or toilet paper into Mr. Conejo's cell to clean up more of Mr. Conejo's bodily fluids.

113.    Defendant DOE 15 knew or reasonably should have known that Mr. Conejo had not taken any medications to treat his obvious symptoms of ethanol (alcohol) withdrawal.

114.    Defendant DOE 15 knew or should have known that the cell in which Mr. Conejo was placed was not appropriate for his medical needs.

115.    By 11:45 p.m. on March 28, 2024, defendant DOE 15 left the area outside Mr. Conejo's cell and no one looked through the window of Mr. Conejo's cell again until 12:28 p.m. on March 28, 2024.

116.    DOE 16 was a male San Diego County Sheriff's Office deputy sheriff or Correctional Officer (exact rank unknown) who went into Mr. Conejo's jail cell at approximately 11:42p.m. on March 28, 2024 along with defendant DOE 15.

117.    Defendant DOE 16 knew that Mr. Conejo had been vomiting, was Highly intoxicated and going through ethanol (alcohol) withdrawal, was in acute and severe medical distress, and had facial bleeding and poor balance.

118.    Defendant DOE 16 knew or reasonably should have known that Mr. Conejo had suffered a head injury with a loss of consciousness while he was in the Medical Clearance for Booking / Booking area at 10:18 p.m., and that Mr. Conejo required immediate medical care/attention, and that he required an immediate transfer to the hospital.

119.    Plaintiffs are informed and believe and based thereon allege that defendant DOE 16 witnessed defendant DOE 14 bring paper towels and/or toilet paper into Mr. Conejo's cell to clean up more of Mr. Conejo's bodily fluids.

120.    Defendant DOE 16 knew or reasonably should have known that Mr. Conejo had not taken any medications to treat his obvious symptoms of ethanol (alcohol) withdrawal.

121.    Defendant DOE 16 knew or reasonably should have known that the cell in which Mr. Conejo was placed inside of was not appropriate for his obvious medical needs and his medical condition.

122.    By 11:45 p.m. on March 28, 2024, defendant DOE 16 had left the area outside Mr. Conejo's cell and no one looked through the window of Mr. Conejo's cell again until 12:28 p.m. on March 28, 2024.

123.    At all times complained of herein, defendants DOES 21though 25 were employees of COUNTY and were responsible for assigning inmates to appropriate housing at the VDF jail.

124.    Additionally, defendant DOE 21 was responsible for assigning Mr. Conejo to the cell in which he was housed from 10:46 p.m. on March 28, 2024 to the moment he was removed from the cell on a stretcher on March 29, 2024.

125.    Plaintiffs are informed and believe and based thereon allege that at all relevant times, defendant DOE 21 knew or reasonably should have known that Mr.

Conejo had been vomiting, was highly intoxicated and going through ethanol (alcohol) withdrawal, was in acute and severe medical distress, and had facial bleeding and poor balance.

126.    Defendant DOE 21 knew or should have known that Mr. Conejo had suffered a head injury with a loss of consciousness while he was in medical intake at 10:18 p.m. and that Mr. Conejo required immediate medical care and attention as well as an immediate transfer to the hospital.

127.    Defendant DOE 21 knew or should have known that due to Mr. Conejo's medical condition, including his seizure condition, that the cell in which he was placed was inappropriate for his medical needs such that he should not have been housed in it.

128.    At all times relevant to this complaint, Defendants DOES 26-30 were employees of COUNTY responsible for performing cell and inmate safety checks at VDF.

129.    Additionally defendants DOES 26 through 30 were tasked with the duty to perform cell safety checks of the cell in which Mr. Conejo was housed at a minimum of no less than every 30 minutes pursuant to Cal. Code Regs. Tit. 15, § 1056, but failed to do so.

130.    Due to Mr. Conejo's medical condition and symptoms, he should have received constant monitoring and safety checks but was not provided the same.

131.    Additionally, defendant DOE 26 was also required when performing cell safety checks to have direct visual observation of Mr. Conejo with sufficient time spent observing to determine whether Mr. Conejo was awake, alert, breathing, and not in medical distress.

132.    Defendant DOE 26 failed to conduct an adequate check of Mr. Conejo in his cell when he looked in through the window of Mr. Conejo's cell for approximately 1 second at approximately 11:30:32 p.m. on March 28, 2024, which was more than 30 minutes after Mr. Conejo was placed in the cell.

133.   Defendant DOE 27 was tasked with the duty to perform cell safety checks of the cell in which Mr. Conejo was housed at a minimum of no less than every 30 minutes pursuant to Cal. Code Regs. Tit. 15, § 1056 but failed to do so.

134.   Due to Mr. Conejo's medical condition and symptoms, he should have received constant monitoring and safety checks but was not provided the same.

135.   Defendant DOE 27 was also required when performing cell safety checks to have direct visual observation of Mr. Conejo with sufficient time spent observing to determine that Mr. Conejo was awake, alert, breathing, and not in medical distress.

136.   Defendant DOE 27 failed to conduct an adequate check of Mr. Conejo in his cell when he looked in through the window of Mr. Conejo's cell for approximately 1 second at approximately 12:28:44 a.m. on March 29, 2024, which was more than 30 minutes after the last cell safety check performed on Mr. Conejo at 11:30:32 p.m. on March 28, 2024.

137.   At all times complained of herein, DOES 1 through 30, inclusive, were acting as individual persons acting under the color of state law and were acting in the course of and within the scope of their employment with defendant COUNTY.

138.   At all times complained of herein, defendants DOES 31 through 35, inclusive, were unknown third-party contractor private entities who employed, supervised, and trained medical staff at the VDF jail, and whose employees and agents were acting under the color of state law.

139.   At all times complained of herein, all individual defendant DOES 1 through 30, inclusive, were either San Diego County Sheriff's Office deputy sheriffs or Custodial Officers or Custodial Assistants or Jail medical personnel or other employees and agents of defendant County of San Diego, and/or were agents or Contractors authorized, contracted and employed to work at the VDF jail.

140.   Plaintiffs are informed and believe and based thereon allege that

defendants DOES 1 through 30, inclusive, knew or reasonably should have known that Mr. Conejo was in acute and severe medical distress, and failed to administer or to obtain emergency medical care for him, and failed provide life saving measures including, summoning medical personnel to attend to Mr. Conejo, and including sending him to the hospital, and failing to ensure medications he that required were taken.

141.    These DOE defendants ignored Mr. Conejo's obvious symptoms of acute and severe medical distress and severe medical illness.

142.    Defendants DOES 36 through 45, inclusive, are sworn peace officers and / or police officers and/or investigators and/or Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendant CITY and/or otherwise employed by the Escondido Police Department, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise responsible for and liable to plaintiffs for the acts complained of in this action, whose identities are and remain unknown to plaintiffs, who will amend their Complaint to add and to show the actual names of said DOE defendants when ascertained by plaintiffs.

143.    At all times complained of herein, DOES 36 through 45, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and/or police officers and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or dispatchers, employed by the Escondido Police Department, and were acting in the course of and within the scope of their employment with defendant CITY.

a. Additionally, Escondido Police Department Officer DOE 36 was the Escondido Police Department transport officer who brought Decedent to VDF and who was personally present while Mr. Conejo was in VDF's

Medical Clearance for Booking / Booking area at 10:18 p.m. on March 28, 2024, and witnessed Mr. Conejo lose consciousness and fall off a bench, his head violently striking the concrete floor, fracturing his skull and facial bones. DOE 36 witnessed Mr. Conejo remain unconscious and motionless on the floor for approximately 10 seconds after the fall and then witnessed him nauseous/vomiting and exhibiting signs of excessive drowsiness, all of which were clear signs of a concussion.

144.   Defendants DOES 46 through 50, inclusive, are sworn peace officers and/or the Chief and/or Assistant Chiefs and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials, employed by Escondido Police Department and/or defendant CITY, who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiffs in this action, such as via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers, approving actions of subordinate officers), via bystander liability (failing to intervene in and stop unlawful actions of their subordinates and/or other officers), and such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the Escondido Police Department for, *inter alia*,: 1) failing to adequately provide medical care to their inmates; 2) providing unlawful conditions of confinement; 3) fabricating evidence; 4) failing to comply with Cal. Penal Code 647(g); and 5) covering up tortious conduct by Escondido Police Department peace officers.

145.   At all times complained of herein, DOES 46 through 50, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as the Chief and/or the Assistant Chiefs and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy

making and/or final policy making officials with the Escondido Police Department, and/or some other public official(s) with defendant CITY, and were acting in the course of and within the scope of their employment with defendant CITY.

146.   At all times complained of herein, defendants DOES 46 through 50, inclusive, were acting as individual persons under the color of state law; under and pursuant to their status and authority as peace officers and/or Supervisory peace officers (as described herein, above and below), and/or policy making peace officers, with the Escondido Police Department and/or otherwise with defendant CITY[4].

147.   Plaintiffs are truly ignorant of the true names and capacities, whether individual, corporate, associate or otherwise of defendants DOES 1 through 50, inclusive, (except for DOE 12 who has now been identified as PREECHAR), and/or are truly ignorant of the facts giving rise to their liability and therefore sue said defendants by said fictitious names DOES.

148.   Plaintiffs will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

149. Plaintiffs are informed and believe and thereon allege that all defendants sued herein as said DOE defendants, including defendant DOES 1 through 50, inclusive, are in some manner responsible for the acts and injuries alleged herein.

150.   The Vista Detention Facility is owned and operated by County of San Diego and staffed by San Diego County Sheriff's Office deputy sheriffs and their supervisors as well as Custodial Officers, Custodial Assistants, Medical Staff and other Sheriff's Office and COUNTY employees and agents.

---

[4] Such as a COUNTY executive officer.

151.   These defendants are and were at all times complained of in this action, agents, servants and employees of each other or the other named defendants and were acting at all times complained of herein within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants and each of the defendants had approved or ratified the actions of the other defendants thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

152.   In committing the acts and/or omissions alleged herein, all defendants acted under color of authority and/or under color of state law.

153.   Plaintiffs sue all public employees as defendants in their individual capacities, as individual persons acting under the color of California state law.

154.   In addition to the above and foregoing, defendants ALBERGO, MATA, CASTLEBERRY, DAI, PREECHAR, and DOES 1 through 50, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiffs and decedent of their federal Constitutional and statutory rights, and California constitutional and statutory state law rights, as complained of in this action.

155.   Defendants ALBERGO, MATA, CASTLEBERRY, DAI, PREECHAR and DOES 1 through 50, acted in joint and concerted action to so deprive the plaintiffs of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States (Constitutional and statutory) law and California (Constitutional and statutory) state law.

156.   Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the Plaintiffs' federal and state constitutional and statutory rights, as complained of herein.

FIRST AMENDED CONSOLIDATED COMPLAINT

23

## III.    FACTS REGARDING THE DEATH OF JOSE RAMON CERVANTES CONEJO

157.   Plaintiffs hereby reallege and incorporate by referenced the allegations set forth in paragraphs 1 through 156, above, as though set forth in full herein.

158.   At the time of his death, Mr. Conejo was 43 years old.

159.   Mr. Conejo was booked into Vista Detention Facility on March 28, 2024 after being arrested by defendant Escondido Police Department police officer James Albergo ("ABERGO") for being drunk in public.

160.   At the time of his booking, Mr. Conejo was suffering from acute ethanol (alcohol) intoxication which was known to the defendants to this action.

161.   Defendants were also informed that Mr. Conejo suffered from seizures and that Mr. Conejo reported that he had used alcohol in the hours before being booked into VDF; something that was blatantly obvious to anyone who observed him.

162.   At the time of his VDF booking, Mr. Conejo was not identified by medical staff as having any head injuries, nor was the arresting Escondido Police officer, defendant Officer Albergo (Badge #0524) aware of Mr. Conejo suffering from any such head injuries.

163.   Accordingly, plaintiffs show that the severe head injuries Mr. Conejo sustained occurred while he was at the VDF jail.

164.   While at the VDF jail, Mr. Conejo was observed by defendants to be acutely intoxicated, disoriented, having hand and body tremors at rest, slurred speech, poor balance, nausea and vomiting during his initial assessment at the Medical Clearance for Booking / Booking area of the VDF jail. Mr. Conejo was also noted as being willing but unable to sign a general informed consent due to his condition, as well as other forms.  Mr. Conejo's history of excessive alcohol use was known to Defendants and met the criteria for a benzodiazepine taper to treat alcohol withdrawal symptoms.

165.   Defendant MATA performed Mr. Conejo's initial medical assessment upon his entry into VDF at the Medical Clearance for Booking / Booking area of the VDF jail.

166.   Despite Mr. Conejo's obvious symptoms and high risk for life-threatening alcohol withdrawal symptoms, defendant MATA did not mark the following items on Mr. Conejo's Medical Clearance assessment: 1) that Mr. Conejo was confused and had an altered mental status; 2) that Mr. Conejo was highly intoxicated; 3) that Mr. Cornejo in obvious alcohol withdrawal, 4) that Mr. Cornejo had slurred speech; 5) that Mr. Cornejo had an unsteady gait, 6) that Mr. Cornejo was in a stupor; 7) that Mr. Cornejo was tremulous; ; and 8) that Mr. Cornejo was disoriented.

167.   Defendant MATA also marked on the VDF Medical Clearance assessment form that Mr. Conejo did not have a disability requiring accommodation.

168.   On the Receiving Screening form completed by defendant MATA, Defendant MATA did not list Mr. Conejo's prior history of seizures under neurological "Chronic Conditions".

169.   On the Receiving Screening form relating to "Substance Abuse Assessments" defendant MATA selected "no" as the response to whether Mr. Conejo had a history or risk of alcohol withdrawal, despite noting that Mr. Conejo drinks 12 beers two times per week and his most recent alcohol use was 5 days or less.

170.   Defendant MATA marked the Medical Clearance Assessment that Mr. Conejo was "fit to continue" the booking process and did not mark on the Medical Clearance form that Mr. Conejo should be assigned to a sobering cell or other safety housing which would have required jail staff to conduct safety checks every 20-30 minutes.

171.   Nor did defendant MATA stop the booking process and immediately refer Mr. Conejo to  Hospital Emergency Room for treatment of his life-threatening withdrawal symptoms as was required by jail policy or for his skull fracture when he struck his head on the concrete floor.

172.   Defendant MATA knew that Mr. Conejo was experiencing tremors, nausea, vomiting, slurred speech and was disoriented because he had noted those symptoms on a CIWA form that was completed one minute <u>before</u> he checked the "no" box on the Receiving Screening form to the question of whether Mr. Conejo had a history or risk of alcohol withdrawal.

173.   Additionally, one minute before defendant MATA completed the Receiving Screening form, he also completed the Comprehensive Detox Screen form.

174.   On the Detox form, defendant MATA selected "none of the above" in response to Detox screening question number 4 which asked whether Mr. Conejo has or was experiencing certain symptoms, including (a) tremors or shakes and (e) nausea or vomiting due to withdrawal.

175.   Defendant MATA also did not mark down that Mr. Conejo suffered from seizures on the Detox Screening form.

176.   Moreover, defendant Escondido Police Department Officer DOE 36 was present with Mr. Conejo inside of the VDF and observed the same objective and obvious symptoms and high risk for life-threatening alcohol withdrawal symptoms and skull injury.

177.   Additionally, while Mr. Conejo was in VDF's Medical Clearance for Booking / Booking area at 10:18 p.m. on March 28, 2024, he lost consciousness while seated upright and fell off the bench, his head violently striking the concrete floor, fracturing his skull and facial bones.

178.   He remained unconscious and motionless on the floor of Medical Clearance for Booking / Booking area for approximately 10 seconds after the fall.

179.   Defendants MATA, Escondido Police Department Officer DOE 36, and PREECHAR were present in the room when Mr. Conejo fell on the floor and fractured his skull and face.

180.   Despite Mr. Conejo exhibiting obvious signs of a concussion including, but not limited to nausea/vomiting, extreme drowsiness, and facial bleeding which required that he be immediately transferred to the hospital, MATA, Escondido Police Department Officer defendant DOE 36 and PREECHAR did nothing, and chose to have Mr. Conejo be booked into VDF jail, and chose not to summon immediate medical care for Mr. Conejo.

181.   Neither MATA nor PREECHAR ever checked on Mr. Conejo between the time he entered the cell at 10:46pm on March 28, 2024 and the time he was found on his cell floor at 1:25 a.m. on March 29, 2024.

182.   MATA, defendant Escondido Police Department Officer DOE 36, and PREECHAR did not perform any tests on Mr. Conejo after he struck his head in medical intake.

183.   MATA and PREECHAR did not perform any assessments of Mr. Conejo's neurological condition after striking his head on the concrete floor.

184.   MATA and PREECHAR did not perform a memory test, concentration test, check Mr. Conejo's pupils, eye-tracking, reflexes, coordination, or balance.

185.   MATA and PREECHAR did not palpate his head or neck and did not spend time observing him.

186.   Plaintiffs show that had defendant MATA accurately completed Mr. Conejo's Receiving Screening and Medical Clearance assessment by accurately reporting Mr. Conejo's symptoms, seizure history and risk of alcohol withdrawal, Mr. Conejo would have either been sent directly to the hospital for appropriate alcohol withdrawal medical treatment, or in the alternative, would have at least been placed into specialized housing for his safety (i.e. the "drunk tank") where

frequent safety checks and medical monitoring would occur such that his declining medical condition would have been promptly identified and were the room is less dangerous to an inmate who falls down in their cell, said floor of the "drunk tank" being basically a rubber mat.

187.    Instead, the jail vital signs log indicates that Mr. Conejo's vital signs were checked by jail staff on March 28, 2024 at 10:19 p.m. and a second time at 2:16 a.m. on March 29, 2024[5].

188.    NCCHC Standards, which jail medical staff were supposed to be following, require that individuals experiencing severe, life-threatening intoxication or withdrawal are to be transferred immediately to a licensed acute care facility, and that individuals at risk for progression to more severe levels of intoxication or withdrawal are to be kept under constant observation by qualified health professionals or health-trained correctional staff.

189.    Plaintiffs show that Mr. Conejo's condition while housed at VDF triggered application of the NCCHC Standards but that Defendants did not follow those standards.

190.    According to the San Diego County Sheriff's Policies and Procedures M.9 (in effect as of December 29, 2023), Individuals who are severely intoxicated, exhibiting symptoms of alcohol or drug withdrawal, or otherwise urgently in need of medical attention will be referred immediately for further evaluation, treatment and/or medical clearance at an Emergency Department.

191.    Defendant DAI assessed Mr. Conejo at 10:34 p.m. on March 28, 2024. DAI's assessment noted that Mr. Conejo reported recent and/or significant alcohol

_____

[5] The March 29, 2024, 2:16 a.m. entry was made after Mr. Conejo had already been transported to Palomar Medical Center, which the City of Vista ambulance provider marked with an arrival time of 2:11 a.m. on March 29, 2024.

use.

192.   DAI's assessment was that Mr. Conejo was going through alcohol withdrawal, and the plan was for Mr. Conejo to start a Diazepam taper, be assigned to a "low bunk" for safety and to be started on Keppra for seizure prophylaxis.

193.   Plaintiffs show that DAI knew that Mr. Conejo was exhibiting life-threatening alcohol withdrawal symptoms and that he required immediate emergency room treatment, but failed to send Mr. Conejo to the hospital and instead allowed him to be housed at VDF.

194.   DAI knew or reasonably should have known that the medications Mr. Conejo required to treat his alcohol withdrawal symptoms needed to be administered immediately, even if involuntarily, but did not order the medications to be administered in that manner to Mr. Conejo.

195.   DAI knew or reasonably should have known that if Mr. Conejo was not being sent to the emergency room, that he required specialized housing that would provide for close medical observation of him in order to protect his health and safety, but DAI failed to order such specialized housing for Mr. Conejo.

196.   Plaintiffs show that Defendant CASTLEBERRY knew or should have known that Mr. Conejo required emergency room treatment for his life-threatening alcohol withdrawal symptoms but did not refer him for such immediate treatment.

197.   Plaintiffs show that CASTLEBERRY knew or reasonably should have known that Mr. Conejo needed to take alcohol withdrawal medications immediately, but that Mr. Conejo did neither took nor was administered those medications.

198.   CASTLEBERRY was required to complete a medication refusal form listing the medications and reason for "refusal" if Mr. Conejo refused to take the medications.

199.   However, CASTLEBERRY did not complete the form in its entirety

and did not disclose which, if any, medications were not taken, or the reasons any such medications were not taken.

200.   Instead, the only "Refusal to Accept Medical Care/Treatment" forms that were completed were for Mr. Conejo's alleged refusal of a urine drug screen, covid test, covid vaccine and flu vaccine.

201.   CASTLEBERRY knew or reasonably should have known that Mr. Conejo was housed in unsafe housing for him due to his medical condition but allowed Mr. Conejo to remain in the unsafe housing which threatened his health and safety.

202.   Mr. Conejo was not responding to CASTLEBERRY at approximately 11:42 p.m. on March 28, 2024, when she knocked on the window of Mr. Conejo's cell at VDF.

203.   Mr. Conejo had facial bleeding and/or showed signs of injury and yet CASTLEBERRY did not enter Mr. Conejo's cell to perform an assessment of his medical condition despite three deputies, defendants DOES 14 through 16, inclusive, being present and entering his cell.

204.   CASTLEBERRY observed defendant DOE 14 bring paper towels and/or toilet paper into Mr. Conejo's cell to clean up more of Mr. Conejo's bodily fluids.

205.  CASTLEBERRY knew or reasonably should have known that the cell in which Mr. Conejo was placed was not appropriate for his medical needs, that he had suffered one or more falls in VDF, including the fall at 10:18 p.m. while he was in medical intake which involved a head injury, yet CASTLEBERRY chose not to summon immediate medical care for Mr. Conejo and performed no examination of him at 11:42 p.m..

206.  CASTLEBERRY knew or reasonably should have known that Mr. Conejo's condition was deteriorating/worsening, yet she made no entries into the jail medical records that would indicate the same or disclose to other medical

providers that when she saw Mr. Conejo through the cell window at 11:42p.m., Mr. Conejo had facial bleeding, was unresponsive and/or excessively drowsy and/or that deputies had to enter the cell with paper towels/toilet paper to clean up Mr. Conejo's bodily fluids.

207.   By 11:45 p.m. on March 28, 2024, CASTLEBERRY left the area outside Mr. Conejo's cell and never checked on him again.

208.   Plaintiff is informed and believes and based thereon alleges that said defendants knew that Mr. Conejo was going through alcohol withdrawal while at VDF and that he was exhibiting life-threatening symptoms that required immediate emergency medical care.

209.   Additionally, said defendants knew or should have known that Mr. Conejo required specialized housing so that his life-threatening medical condition could be closely monitored.

210.   Said defendants did not refer Mr. Conejo to the Emergency Room for immediate treatment of his life-threatening alcohol withdrawal symptoms and instead placed him in unsafe housing at VDF.

211.   Plaintiffs show that due to Mr. Conejo's withdrawal symptoms, seizure condition, and housing assignment requiring a low bunk for safety, defendants improperly placed Mr. Conejo in housing that was inappropriate and unsafe for his medical needs and where he would not receive appropriate monitoring of his medical condition.

212.   Plaintiffs show that said defendants knew or reasonably should have known at the time Mr. Conejo was assigned to his cell that it was medically unsafe for him and exposed him to a substantial risk of injury or death.

213.   Plaintiffs show that the head injuries Mr. Conejo sustained at the VDF jail are also consistent with severe head injuries from multiple falls while at the VDF jail, including the first fall occurring at medical intake when his head directly

struck the concrete floor, in the presence of defendants MATA, DOE 36 and PREECHAR and the other defendants shown above and below, as well as one or more falls occurring within his cell from unknown heights (i.e, either falling from a top bunk, falling from a standing position or falling from a sitting position, or alternatively, physical injuries from interactions with other inmates due to jail staff failing to provide for Mr. Conejo's physical safety), all of which would not have occurred if Mr. Conejo was referred to the Emergency Room for appropriate treatment or properly housed in housing which afforded close monitoring of his medical condition.

214.    Additionally, on January 16, 2026[6], plaintiffs learned for the first time that on March 28, 2024 at 10:18 p.m. Mr. Conejo fell off a bench while in the medical intake area while he was in an upright seated position, directly striking his head on the concrete floor and experiencing a 10-second loss of consciousness followed by clear signs of a traumatic brain injury including, but not limited to: nausea/vomiting and extreme drowsiness.

215.  Defendant DOE 36 was with Mr. Conejo in the Medical Clearance for Booking / Booking area when he fell off of the bench.

216.    On January 23, 2026 Plaintiffs learned for the first time that jail medical staff determined that between the time Mr. Conejo entered the jail cell at VDF on March 28, 2024 at 10:46 p.m. and 1:25 a.m. on March 29, 2024, Mr. Conejo had suffered at least one more fall while in the jail cell.

217.    Plaintiffs show that Defendant COUNTY knows or should have known the mechanics of all falls that Mr. Conejo had while in his jail cell,

---

[6] And on February 2, 2026 for the Benitez and Quintero plaintiffs/

including how many falls occurred while he was in the cell and whether the falls were from a height (i.e., top bunk, bench, or standing position).

218.    However, COUNTY has not produced video or descriptions from the interior of the cell to plaintiffs.

219.    On March 29, 2024, at approximately 1:30 a.m., Mr. Conejo was found laying on the floor of his cell with blood in his nostrils, his right eye swollen shut and with facial swelling.

220.    Paramedics who observed Mr. Conejo at the jail before taking him to Palomar Medical Center found that he exhibited an altered level of consciousness, strong alcohol odor, urinary incontinence odor, trauma to his face, his eyes were sluggish, he had a hematoma to his right eye, and swelling and controlled bleeding from his nose.

221.    He was transported to Palomar Medical Center in Escondido and admitted to the hospital on March 29, 2024 at 2:18 a.m..

222.    At the hospital, Mr. Conejo was diagnosed with severe head injuries, including: left frontal skull fracture, fracture of medial wall of right orbit, bifrontal subarachnoid hemorrhage, bilateral subdural hemorrhages involving frontal and parietal areas with bilateral hemorrhagic cerebral contusions, bilateral periorbital contusions, acute alcohol intoxication, alcohol withdrawal, and abnormal blood results.

223.    While at Palomar Medical Center, Mr. Conejo fell into a comatose state due to his head trauma.

224.    He remained bed-ridden in a comatose state for approximately two weeks before dying in the hospital on April 12, 2024.

## FIRST CAUSE OF ACTION
### Deliberate Indifference to Serious Medical Needs
**[42 U.S.C. §1983]**
**(U.S. Const. Amend. 14)**
**By the ESTATE OF JOSE RAMON CERVANTES CONEJO, by and through his substituted Successor-In-Interest, FABIAN CERVANTES GARCIA and by MARITZA BENITEZ, as successor-in-interest to Decedent JOSE RAMON CERVANTES CONEJO, Against Defendants PAUL MATA; DANA CASTLEBERRY; NHI NGOC DAI, JAIME PREECHAR, JAMES ALBREGO; ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36; and DOES 1 through 45, inclusive**

225.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 224 as if set forth in full herein.

226.    As shown above, defendants violated Jose Ramon Cervantes Conejo's Fourteenth Amendment right to medical care by deliberate indifference to his serious and obvious medical needs.

227.    As shown above, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 to 45 knew that JOSE RAMON CERVANTES CONEJO had been vomiting, was disoriented, had tremors, was highly intoxicated, was in alcohol withdrawal, had slurred speech, an unsteady gait, and suffered from seizures.

228.    As shown above, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36  and DOES 1 to 45, inclusive, were aware from Mr. Conejo's symptoms that his medical condition was serious and life-threatening.

229.    As shown above, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36  and DOES 1 to 45 knew that Mr. Conejo had neither taken nor was he administered the necessary medications to treat his obvious symptoms of withdrawal.

230.    As shown above, defendants MATA, CASTLEBERRY, DAI,

PREECHAR, ALBERGO, defendant Escondido Police Department Officer DOE 36 and DOES 1 to 45 knew that Mr. Conejo required a low bunk as part of the medical treatment plan for his withdrawal symptoms, but did not ensure that he received a low bunk and/or did not communicate his need for a low bunk to other jail or medical staff responsible for Mr. Conjeo's care and custody at the VDF jail, including DOES 1 to 45.

231. As shown above, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 through 45, inclusive, were jail, police or medical staff who saw Mr. Conejo in acute and severe medical distress.

232. However, as also shown above, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 to 45, inclusive, nonetheless took no action to ensure that Mr. Conejo received the medications that he needed.

233. Moreover, also as shown above, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 to 45, inclusive, failed to obtain medical treatment and care for Mr. Conejo, and failed to have him taken to a Hospital Emergency Department and/or to appropriate specialized housing, such as a safety cell (i.e. "the drunk tank") that would provide adequate medical monitoring of Mr. Conejo's symptoms.

234. Moreover, also as shown above defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 to 45, inclusive, ignored the obvious signs of Mr. Conejo's medical distress and ignored Escondido Police and San Diego County Sheriff's Office Jail Policies and Procedures which required that Mr. Conejo be transported to a Hospital Emergency Department immediately.

235. Moreover, also as shown above defendants MATA, CASTLEBERRY,

DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 to 45, inclusive, made intentional decisions and omissions regarding Mr. Conejo's conditions of confinement and the denial of adequate medical care, including but not limited to: 1) not adequately documenting all of Mr. Conejo's medical condition and history within the jail medical records; 2) not immediately summoning medical care (paramedics) to attend to Mr. Conejo and to transport Mr. Conejo to the hospital; 3) not referring Mr. Conejo to the Hospital Emergency Department immediately as required by the San Diego County Sheriff's Office's Jail's policies and procedures; 4) not administering alcohol withdrawal medications immediately, even if involuntarily; 5) not properly communicating to jail staff Mr. Conejo's medical condition and the need for close medical monitoring, including frequent cell safety checks, specialized housing and specialized bunk requirements; 6) not providing close medical monitoring of Mr. Conejo's obvious serious medical condition and deteriorating symptoms, and 7) not housing Mr. Conejo in a safe cell for persons suffering from severe intoxication.

236. Defendants MATA's, CASTLEBERRY's, DAI's, PREECHAR's, ALBERGO's, defendant Escondido Police Department Officer DOE 36's and DOES 1 through 45, inclusive's, intentional decisions and omissions put Mr. Conejo at substantial risk of suffering serious harm.

237. Defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, defendant Escondido Police Department Officer DOE 36 and DOES 1 to 45, inclusive, did not take reasonable available measures to abate or reduce the risk of serious harm to Mr. Conejo, even though reasonably well-trained police, Deputy Sheriffs, Custodial Officers, Custody Assistants, Jail Nurses, medical providers and other Sheriff's Department personnel would have understood the high degree of risk involved, making the consequences of said defendants' conduct obvious, namely - serious medical injury or death to Mr. Conejo.

238.   Moreover, as shown above, said defendants also failed to take Jose Ramon Cervantes Conejo to a facility for the treatment of inebriates for a 72-hold pursuant to Cal. Penal Code § 647(g) and pursuant to Cal. Welf & Inst Code § 5170, notwithstanding that Jose Ramon Cervantes Conejo was arrested and was taken into the VDF Jail.

239.   Such reasonably available measures included but are not limited to: referring Mr. Conejo to the hospital emergency department immediately; ensuring Mr. Conejo received withdrawal medications immediately; ensuring close medical monitoring and cell safety checks were performed; and ensuring Mr. Conejo's specialized housing and bunk requirements were communicated to, and executed by jail staff.

240.   By not taking such reasonable available measures, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, defendant Escondido Police Department Officer DOE 36 and DOES 1 to 45, inclusive, caused the plaintiffs' injuries alleged herein.

241.   Defendants MATA's, CASTLEBERRY's, DAI's, PREECHAR's, ALBERGO's, Escondido Police Department Officer DOE 36's and DOES 1 to 45 inclusive's, conduct was objectively unreasonable and said defendants were deliberately indifferent to Jose Ramon Cervantes Conejo's known, obvious and serious medical needs, which caused harm to the decedent, including his death.

242.   By failing to properly treat and to obtain medical care for Jose Ramon Cervantes Conejo's serious medical condition when he was vomiting, disoriented, had tremors, was intoxicated, was in withdrawal, had slurred speech, an unsteady gait, and suffered from seizures, as well as the obvious head injures suffered by Mr. Conejo from his fall onto his head in the Medical Clearance for Booking / Booking area, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO,

Escondido Police Department Officer DOE 36 and DOES 1 through 45, inclusive, were deliberately indifferent to Mr. Conejo's serious medical needs.

243. As a direct consequence of these failures, Mr. Conejo's serious medical condition was ignored by defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, Escondido Police Department Officer DOE 36 and DOES 1 to 45, inclusive.

244. The conduct alleged herein by defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 to 45, inclusive, caused Jose Ramon Cervantes Conejo to be deprived of his federal constitutional right to medical care while in police custody.

245. As a direct and proximate result of defendants MATA's, CASTLEBERRY's, DAIs, PREECHAR's, ALBERGO's, Escondido Police Department Officer DOE 36's and DOES 1 to 45, inclusive's, deliberate indifference to Jose Ramon Cervantes Conejo's serious medical needs, Mr. Conejo experienced severe head injuries, severe pre-death physical pain and suffering, severe pre-death emotional distress and mental anguish for days, as well as loss of his life and other damages alleged herein, all in an amount to be shown at trial in excess of $20,000,000.00.

246. The actions complained of herein by defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 to 45, inclusive, were done maliciously and in deliberate or reckless disregard of decedent's constitutional rights, sufficient for an award of punitive/exemplary damages against said defendants in an amount according to proof at trial in excess of $20,000,000.00.

## SECOND CAUSE OF ACTION
### Loss of Familial Relationship / Right of Association
### (U.S. Const. Amend. 14)
### [42 U.S.C. §1983]
### By Plaintiffs GUADALUPE CONEJO RAMIREZ and MARITZA BENITEZ against Defendants PAUL MATA, DANA CASTLEBERRY, NHI NGOC DAI, JAIME PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 through 45

247.   Plaintiffs hereby reallege and incorporate by reference the allegations shown in paragraphs 1 through 246, inclusive, as though set forth in full herein.

248.   As shown above, defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, Escondido Police Department Officer DOE 36  and DOES 1 to 45, inclusive deprived Jose Ramon Cervantes Conejo of his rights under the United States Constitution to not be deprived of medical care for his serious and obvious medical condition by said defendants' deliberate indifference to his serious and obvious medical condition and distress.

249.   The aforementioned acts and/or omissions of said defendants in being deliberatively indifferent to Jose Ramon Cervantes Conejo's serious medical needs, health, and safety, which proximately caused the untimely and wrongful death of Jose Ramon Cervantes Conejo, deprived plaintiff Guadalupe Conejo Ramirez and Maritza Benitez of their familial relationship with Jose Ramon Cervantes Conejo, in violation of their substantive due process right to their familial relationship under the Fourteenth Amendment to the United States Constitution.

250.   There was no legitimate penological or custodial interests in failing to communicate critical medical information and denying/delaying access to medical care to VDF inmate Jose Ramon Cervantes Conejo while he was in severe and obvious medical distress and extremis.

251.   There was no legitimate penological/custodial interest in said

defendants watching Jose Ramon Cervantes Conejo vomit, be disoriented, have tremors, have slurred speech, an unsteady gait, experience alcohol withdrawal, suffer from seizures, fracture his face and skull from falls at the jail, and to not provide or seek or obtain medical care for Jose Ramon Cervantes Conejo, or to ensure his safety at the VDF jail by giving him safe housing assignments and by frequently checking on him in his jail cell.

252.    Said defendants' deliberate indifference to Jose Ramon Cervantes Conejo's medical need and their failure to provide him any medical care whatsoever is shocking to the conscience.  Also, moreover as shown above, said defendants also failed to take Jose Ramon Cervantes Conejo to a facility for the treatment of inebriates for a 72-hold pursuant to Cal. Penal Code § 647(g) and pursuant to Cal. Welf & Inst Code § 5170, notwithstanding that Jose Ramon Cervantes Conejo was arrested and was taken into the VDF Jail.

253.    The deprivation of the rights alleged above has destroyed the Constitutional rights of Jose Ramon Cervantes Conejo's mother, plaintiff Guadalupe Conejo Ramirez, to the society and companionship of her son, and caused her to suffer the loss of Jose Ramon Cervantes Conejo's love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support, and also caused Guadalupe Conejo Ramirez to suffer severe physical, mental and emotional pain, suffering and distress, all in an amount in excess of $20,000,000.00, in violation of her right to her familial relationship with her son pursuant to the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

254.    The conduct alleged herein violated Jose Ramon Cervantes Conejo's rights alleged above thereby resulting in a deprivation of plaintiff Guadalupe Conejo Ramirez's rights alleged above which has legally, proximately, foreseeably and actually caused plaintiff Guadalupe Conejo Ramirez to suffer the loss of Mr.

Conejo's love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support and caused Mr. Conejo emotional distress, pain and suffering, death and further damages according to proof at the time of trial.

255.   The actions of said defendants also caused the loss to plaintiff Maritza Benitez of the love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support of Jose Ramon Cervantes Conejo, and has caused plaintiff Maritza Benitez to suffer severe physical, mental and emotional distress, pain and suffering, all in an amount in excess of $20,000,000.00, in violation of her right to her familial relationship with her husband pursuant to the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

256.   The actions of defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36  and DOES 1 to 45, inclusive were done maliciously and in reckless disregard of said plaintiffs' and of Jose Ramon Cervantes Conejo's constitutional rights in an amount in excess of $20,000,000.00.

### THIRD CAUSE OF ACTION
**Violation Of 42 U.S.C. § 1983**
**Deprivation Of Life Without Due Process Of Law**
**(U.S. Const. Amend. 14)**
**By the ESTATE OF JOSE RAMON CERVANTES CONEJO, by and through his substituted Successor-In-Interest, FABIAN CERVANTES GARCIA and by MARITZA BENITEZ, as successor-in-interest to Decedent JOSE RAMON CERVANTES CONEJO, Against Defendants PAUL MATA; DANA CASTLEBERRY; NHI NGOC DAI, JAIME PREECHAR, JAMES ALBREGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 1 through 45, inclusive**

257.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 256, inclusive, above, as if set forth in full herein.

FIRST AMENDED CONSOLIDATED COMPLAINT

258.    As set forth above, on March 28, 2024 plaintiffs' decedent CONEJO was arrested and taken into custody at VDP where he was incarcerated as a pretrial detainee - inmate in that facility.

259.    Also as set forth above, thereafter, while in custody at VPD, CONEJO was showing obvious signs of alcohol withdrawal and was otherwise in serious need of immediate care, including after he fell off of the bench and fractured his skull.

260.    As shown above, defendants MATA, CASTLEBERRY, NHI NGOC DAI, PREECHAR, ALBREGO, Escondido Police Department Officer DOE 36 and DOES 1 through 45, inclusive improperly, wrongfully, and recklessly failed to document or communicate Jose Ramon Cervantes Conejo's serious medical conditions to other deputy sheriffs / Custodial Officers at the VDF jail, resulting in his being improperly housed at the VDF jail, and resulting in further falls and further skull / facial bone damages to him.

261.    Moreover, as shown above, said defendants failed to either provide or to obtain emergency medical care for plaintiff's decedent Jose Ramon Cervantes Conejo that resulted in in death.

262.    Moreover, as shown above, said defendants failed to monitor Jose Ramon Cervantes Conejo while he was housed at the VDF jail, also resulting in the deterioration of his medical condition, and ultimately resulted in his death

263.    Moreover as shown above, said defendants also failed to take Jose Ramon Cervantes Conejo to a facility for the treatment of inebriates for a 72-hold pursuant to Cal. Penal Code § 647(g) and pursuant to Cal. Welf & Inst Code § 5170, notwithstanding that when Jose Ramon Cervantes Conejo was arrested and was taken into the VDF Jail.

264.    Moreover as shown above, defendants improperly, wrongfully, and

recklessly failed to take appropriate action to monitor CONEJO despite his obvious symptoms of being in serious medical distress.

265.   Moreover as shown above, defendants improperly, wrongfully, and recklessly failed to place CONEJO in proper jail housing where he could be closely monitored and, on information and belief, failed to place him in a medically required low bunk, or in a safety cell (i.e. "the drunk tank").

266.   Moreover as shown above, defendants improperly, wrongfully, and recklessly delayed and failed to summon medical care to Jose Ramon Cervantes Conejo who was in obvious physical distress and in acute need of urgent medical care.

267.   Moreover as shown above, defendants put plaintiff's decedent Jose Ramon Cervantes Conejo in substantial risk of suffering serious harm and did not take reasonable available measures to abate or reduce the risk of serious harm to him, even though a reasonable police officer and/or nurse and/or medical provider and/or deputy sheriff and/or Custodial Officer under the circumstances would have understood the high degree of risk involved.

268.  As a result of the actions and omissions of defendants, shown above, said defendants knew that CONEJO faced a substantial risk of suffering serious and severe medical harm, as well as facing a serious medical need.

268.   Accordingly, defendants were deliberately indifferent to Jose Ramon Cervantes Conejo's obvious medical need, as said defendants knew of it and disregarded it by failing to take reasonable measures to address it, to wit; to immediately summon medical care for Jose Ramon Cervantes Conejo, to properly monitor Jose Ramon Cervantes Conejo, to properly house Jose Ramon Cervantes Conejo, and the failure to take Jose Ramon Cervantes Conejo to a treatment facility for the treatment of inebriates for a 72-hour hold pursuant to Cal. Welf &

Inst Code § 5170 and pursuant to Cal. Penal Code § 647(g); all in violation of plaintiffs' decedent's rights under the Fourteenth Amendment to the United States Constitution.

269.   The actions of defendants as complained of above, that resulted in the death of plaintiff's decedent CONEJO, were done with a deliberate indifference to plaintiffs' decedent CONEJO's life, and were done in a manner that shocks the conscience; all in violation of plaintiffs' decedent CONEJO's right to his life under the Fourteenth Amendment to the United States Constitution.

270.   As a direct and proximate result of defendants' actions and omissions complained of above, plaintiff's decedent Jose Ramon Cervantes Conejo CONEJO's suffered the loss of his life; his hedonic damages, including loss of the rest of his natural life, and his right to the enjoyment of the rest of his life, and all of those joys, achievements and love that he would have experienced, but for said defendants' conduct complained of above, in an amount to be proven at trial in excess of $20,000,000.00.

271.   The conduct by defendants were done maliciously and in reckless disregard Plaintiffs' decedent CONEJO's federal constitutional rights, sufficient for an award of punitive damages, save COUNTY and CITY, in an amount to be proven at trial in excess of $20,000,000.00.

**FOURTH CAUSE OF ACTION**
**Failure to Properly Train and Supervise**
**Monell Liability[7] and Municipal Liability**
**[42 U.S.C. § 1983]**
**By the ESTATE OF JOSE RAMON CERVANTES CONEJO by and through**

_____

[7] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

**Its Successor-In-Interest FABIAN CERVANTES GARCIA, and by MARITZA BENITEZ, individually and as successor-in-interest to Decedent JOSE RAMON CERVANTES CONEJO Against Defendants COUNTY OF SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC. and NAPHCARE OF SAN DIEGO, LLC**

272.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 271, inclusive, above, as if set forth in full herein.

273.     Defendants COUNTY OF SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and defendants DOES 1 through 4, inclusive, failed to properly train and supervise defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO, Escondido Police Department Officer DOE 36  and DOES 1 through 45, inclusive in the performance of their duties, to wit; said defendants failed to properly train their subordinates on how to deal with arrestees and with jail inmates in acute medical distress, including inmates experiencing alcohol withdrawal and/or inmates suffering from head injuries, such as obtaining immediate medical attention for such inmates.

274.     Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to properly train and supervise defendants MATA, CASTLEBERRY, DAI, PREECHAR and DOES 1 through 45, inclusive, with regard to the need to communicate critical medical information to each other and to deputy sheriffs and Custodial Officers so as to house inmates in jail cells that will minimize harm that might come to them from being placed in a cell in which they might injure themselves or otherwise get injured in light of their medical condition.

275.     Moreover, defendants COUNTY OF SAN DIEGO failed to train its deputy sheriffs and Custodial Officers to not house inmates in jail cells that are

dangerous for those inmates experiencing serious medical injury/condition to be housed in.

276.  Moreover, defendants COUNTY OF SAN DIEGO and CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and defendants DOES 1 through 4, inclusive, failed to properly train and supervise their employees, officers and deputy sheriffs, nurses and other medical personnel with regard to the treatment of persons withdrawing from alcohol addiction/intoxication, and/or severe intoxication, such as following the NCCHC Standards when identifying and treating individuals experiencing withdrawals and/or severe intoxication, including San Diego County Sheriff's Office's Policies and Procedures regarding detainees suffering withdrawal; to wit; taking such arrestees or jail inmates to a hospital for examination and treatment when they are so intoxicated as to get arrested for public intoxication and/or are experiencing alcohol withdrawals, and, their duty to those who they arrest or have imprisoned in their jail for violation Cal. Penal Code § 647(f), such as Jose Ramon Cervantes Conejo, to take to a treatment facility for the treatment of inebriates for a 72-hour hold pursuant to Cal. Welf & Inst Code § 5170 and pursuant to Cal. Penal Code § 647(g); all in violation of plaintiffs' decedent's rights under the Fourteenth Amendment to the United States Constitution.

277.  Moreover, defendants COUNTY OF SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and DOES 1 through 4, inclusive, failed to properly train and supervise their employees with regard to recognizing person who suffer seizures, who suffer serious and obvious head injuries, and on the appropriate treatment and precautions to be taken at the VDF jail for such persons with seizure disorder, and the proper housing of arrestees and inmates who suffer from seizures.

278.    Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to properly train their deputies, and custodial officers to ensure that all Jail Staff and employees, including Contractor employees, to properly medically screen for booking arrestees brought to the VDF jail for booking and confinement there.

279.    Accordingly, said defendants failure to properly to maintain adequate and proper training necessary to educate defendants' deputies, officers and medical staff as to the Constitutional rights of inmates, and to prevent the consistent and systematic failure to provide medical care, resulted in the injuries to plaintiff's decedent complained of herein.

280.    Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to train and supervise doctors, nurses and other staff on the necessary coordination of care of inmates suffering from serious medical conditions like alcohol withdrawal and/or concussions and/or concussions with loss of consciousness.

281.    Moreover, defendant COUNTY OF SAN DIEGO failed to train their deputy sheriffs and Custodial Officers to perform extra frequent cell safety checks on jail inmates suffering from serious medical conditions.

282.    Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to train their medical doctors, physician assistants and nurses on the necessary care of inmates suffering from serious medical conditions including severe alcohol intoxication and/or withdrawal and/or concussions and/or concussions with loss of consciousness and they failed to implement policies and procedures with respect to communicating such sensitive and critical information to ensure that inmates will be cared for.

283.    All of these areas of a failure to train by defendants COUNTY OF

SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC are issues that deputies and Custodial officers, nurses and other medical personnel and police officers often deal with in the course of their duties, and need to be properly trained to deal with those issues.

284.    Despite knowledge that critical medical information was not being communicated from the medical staff to sworn staff, DOES 1 to 4 took no action.

285.    Despite their knowledge of previous instances of wrongful deaths in the jails as a result of the failure to communicate critical medical conditions, the failure to provide constant medical monitoring of pre-trial detainees experiencing alcohol withdrawal, the failure to provide necessary medications to treat serious medical conditions, or the failure to immediately summon medical care for inmates with serious head injuries, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to properly supervise, train or retrain their deputies and medical staff to prevent deaths of inmates.

286.    Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC  DOES 1 to 4, while acting under color of state law, subjected Mr. Conejo and other persons similarly situated to a pattern of conduct consisting of continuing, widespread and persistent patterns of unconstitutional misconduct, set in motion by their deputies, officers, nurses and physicians and said defendants other employees and agents knowingly refused to terminate a series of acts by their subordinates, that defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC knew or reasonably should have known would cause their employees and subordinates to deprive plaintiffs' decedent and plaintiffs of their constitutional rights, as described above.

287.    Said defendants COUNTY OF SAN DIEGO, NAPHCARE, INC.,

NAPHCARE OF SAN DIEGO, LLC failure to promulgate or maintain constitutionally adequate training and perform constitutionally adequate supervision was done with deliberate indifference to the rights of Jose Ramon Cervantes Conejo and others in his position.

288. Jose Ramon Cervantes Conejo's death was a foreseeable consequence of defendants COUNTY OF SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failure to properly train its employees, officers, deputies and medical personnel, and its employee deputy sheriffs, Custodial Officers and police officers' failure to care for him, in medical screening, in not taking him into civil protective custody under Cal. Welf & Inst Code § 5170 and pursuant to Cal. Penal Code § 647(g) in failing to administer emergency medical treatment to Jose Ramon Cervantes Conejo and/or in failing to summon medical care for him, in improperly housing Jose Ramon Cervantes Conejo and improperly not checking his medical status in his jail cell frequently enough for his severe and serious medical condition.

289. As a result of defendants COUNTY OF SAN DIEGO, CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC's failure to train and supervise their police officers, deputy sheriffs and custodial officers and nurses and other medical personnel, Jose Ramon Cervantes Conejo's medical condition was not properly treated and he was not properly monitored, and, ultimately died.

290. Said defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and CITY OF ESCONDIDO's failure to promulgate or maintain constitutionally adequate training and perform constitutionally adequate supervision was done with deliberate indifference to the rights of Jose Ramon Cervantes Conejo and others in his position.

291. As a result, decedent Jose Ramon Cervantes Conejo suffered, both

physical, mental and emotional pre-death pain, suffering and distress, as well as ultimately his death, hedonic damages, all in an amount in excess of $20,000,000.00.

292.   As a result of defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failure to property train its deputies, officers, nurses and physicians, plaintiffs Estate Of Jose Ramon Cervantes Conejo by and through its Successor-In-Interest Fabian Cervantes Garcia, and Maritza Benitez, as successor-in-interest to decedent Jose Ramon Cervantes Conejo now are entitled to the award of damages that decedent Jose Ramon Cervantes Conejo suffered, both physical, mental and emotional pre-death pain, suffering and distress, as well as ultimately his death, all in an amount in excess of $20,000,000.00.

293.   In addition, the deprivation of the rights alleged above has destroyed the Constitutional rights of Jose Ramon Cervantes Conejo's mother, plaintiff Guadalupe Conejo Ramirez, to the society and companionship of her son, and caused her to suffer the loss of Jose Ramon Cervantes Conejo's love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support, and also caused Guadalupe Conejo Ramirez to suffer severe physical, mental and emotional pain, suffering and distress, all in an amount in excess of $20,000,000.00, in violation of her right to her familial relationship with her son pursuant to the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

294. Also, the conduct alleged herein violated Jose Ramon Cervantes Conejo's rights alleged above thereby resulting in a deprivation of plaintiff Guadalupe Conejo Ramirez's rights alleged above which has legally, proximately, foreseeably and actually caused plaintiff Guadalupe Conejo Ramirez to suffer the loss of Mr. Conejo's love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support and caused Mr. Conejo emotional

distress, pain and suffering, death and further damages according to proof at the time of trial.

295.    The actions of said defendants also caused the loss to plaintiff Maritza Benitez of the love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support of Jose Ramon Cervantes Conejo, and has caused plaintiff Maritza Benitez to suffer severe physical, mental and emotional distress, pain and suffering, all in an amount in excess of $20,000,000.00, in violation of her right to her familial relationship with her husband pursuant to the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

**FIFTH CAUSE OF ACTION**
**Failure to Properly Train and Supervise**
**Monell Liability[8] and Municipal Liability**
**[42 U.S.C. § 1983]**
**By Plaintiffs Guadalupe Conejo Ramirez, individually, and Maritza Benitez, individually and as successor in interest, against Defendants**
**COUNTY OF SAN DIEGO; CITY OF ESCONDIDO NAPHCARE, INC. and NAPHCARE OF SAN DIEGO, LLC**

296.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 295, inclusive, above, as if set forth in full herein.

297.    Defendants COUNTY OF SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and defendants DOES 1 through 4, inclusive, failed to properly train and supervise defendants MATA, CASTLEBERRY, DAI, PREECHAR, ALBERGO and DOES 1 through 45, inclusive in the performance of their duties, to wit; said defendants failed to

---

[8] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

properly train their subordinates on how to deal with arrestees and with jail inmates in acute medical distress, including inmates experiencing alcohol withdrawal and/or inmates suffering from head injuries, such as obtaining immediate medical attention for such inmates.

298.    Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to properly train and supervise defendants MATA, CASTLEBERRY, DAI, PREECHAR and DOES 1 through 45, inclusive, with regard to the need to communicate critical medical information to each other and to deputy sheriffs and Custodial Officers so as to house inmates in jail cells that will minimize harm that might come to them from being placed in a cell in which they might injure themselves or otherwise get injured in light of their medical condition.

299.    Moreover, defendants COUNTY OF SAN DIEGO failed to train its deputy sheriffs and Custodial Officers to not house inmates in jail cells that are dangerous for those inmates experiencing serious medical injury/condition to be housed in.

300.    Moreover, defendants COUNTY OF SAN DIEGO and CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and defendants DOES 1 through 4, inclusive, failed to properly train and supervise their employees, officers and deputy sheriffs, nurses and other medical personnel with regard to the treatment of persons withdrawing from alcohol addiction/intoxication, and/or severe intoxication, such as following the NCCHC Standards when identifying and treating individuals experiencing withdrawals and/or severe intoxication, including San Diego County Sheriff's Office's Policies and Procedures regarding detainees suffering withdrawal; to wit; taking such arrestees or jail inmates to a hospital for examination and treatment when they are so intoxicated as to get arrested for public intoxication and/or are experiencing alcohol

withdrawals, and, their duty to those who they arrest or have imprisoned in their jail for violation Cal. Penal Code § 647(f), such as Jose Ramon Cervantes Conejo, to take to a treatment facility for the treatment of inebriates for a 72-hour hold pursuant to Cal. Welf & Inst Code § 5170 and pursuant to Cal. Penal Code § 647(g); all in violation of plaintiffs' decedent's rights under the Fourteenth Amendment to the United States Constitution.

301.    Moreover, defendants COUNTY OF SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and DOES 1 through 4, inclusive, failed to properly train and supervise their employees with regard to recognizing person who suffer seizures, and the appropriate treatment and precautions to be taken at the VDF jail for such persons with seizure disorder, and the proper housing of arrestees and inmates who suffer from seizures.

302.    Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to properly train their deputies, an custodial officers to ensure that all Jail Staff and employees, including Contractor employees, to properly medically screen for booking arrestees brought in the VDF jail.

303.    Accordingly, said defendants failure to properly to maintain adequate and proper training necessary to educate defendants' deputies, officers and medical staff as to the Constitutional rights of inmates; and to prevent the consistent and systematic failure to provide medical care resulted in the injuries to plaintiff's decedent complained of herein.

304.    Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to train and supervise doctors, nurses and other staff on the necessary coordination of care of inmates suffering from serious medical conditions like alcohol withdrawal and/or concussions and/or concussions with loss of consciousness.

305.   Moreover, defendant COUNTY OF SAN DIEGO failed to train their deputy sheriffs and Custodial Officers to perform cell extra frequent cell safety checks on jail inmates suffering from serious medical conditions.

306.   Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to train their medical doctors, physician assistants and nurses on the necessary care of inmates suffering from serious medical conditions including severe alcohol intoxication and/or withdrawal and/or concussions and/or concussions with loss of consciousness and they failed to implement policies and procedures with respect to communicating such sensitive and critical information to ensure that inmates will be cared for.

307.   All of these areas of a failure to train by defendants COUNTY OF SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC are issues that deputies and Custodial officers, nurses and other medical personnel and police officers often deal with in the course of their duties, and need to be properly trained to deal with those issues.

308.   Despite knowledge that critical medical information was not being communicated from the medical staff to sworn staff, DOES 1 to 4 took no action.

309.   Despite their knowledge of previous instances of wrongful deaths in the jails as a result of the failure to communicate critical medical conditions, the failure to provide constant medical monitoring of pre-trial detainees experiencing alcohol withdrawal, the failure to provide necessary medications to treat serious medical conditions, or the failure to immediately summon medical care for inmates with serious head injuries, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failed to properly supervise, train or retrain their deputies, Correction Officers and medical staff to prevent deaths of inmates.

310.   Moreover, defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC  DOES 1 to 4, while acting under color

of state law, subjected Mr. Conejo and other persons similarly situated to a pattern of conduct consisting of continuing, widespread and persistent patterns of unconstitutional misconduct, set in motion by their deputies, officers, nurses and physicians and said defendants other employees and agents knowingly refused to terminate a series of acts by their subordinates, that defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC  knew or reasonably should have known would cause their employees and subordinates to deprive plaintiffs' decedent and plaintiffs of their constitutional rights, as described above.

311.   Said defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failure to promulgate or maintain constitutionally adequate training and perform constitutionally adequate supervision was done with deliberate indifference to the rights of Jose Ramon Cervantes Conejo and others in his position.

312.   Jose Ramon Cervantes Conejo's death was a foreseeable consequence of defendants COUNTY OF SAN DIEGO; CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC failure to properly train its employees, officers, deputies and medical personnel, and its employee deputy sheriffs, Custodial Officers and police officers' failure to care for him, in medical screening, in not taking him into civil protective custody under Cal. Welf & Inst Code § 5170 and pursuant to Cal. Penal Code § 647(g) in failing to administer emergency medical treatment to Jose Ramon Cervantes Conejo and/or in failing to summon medical care for him, in improperly housing Jose Ramon Cervantes Conejo and improperly not checking his medical status in his jail cell frequently enough for his severe and serious medical condition.

313.   As a result of defendants COUNTY OF SAN DIEGO, CITY OF ESCONDIDO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC's failure

to train and supervise their police officers, deputy sheriffs and custodial officers and nurses and other medical personnel, Jose Ramon Cervantes Conejo's medical condition was not properly treated and he was not properly monitored, and, ultimately died.

314. Said defendants COUNTY OF SAN DIEGO, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and CITY OF ESCONDIDO's failure to promulgate or maintain constitutionally adequate training and perform constitutionally adequate supervision was done with deliberate indifference to the rights of Jose Ramon Cervantes Conejo and others in his position.

315. As a result, decedent Jose Ramon Cervantes Conejo suffered, both physical, mental and emotional pre-death pain, suffering and distress, as well as ultimately his death.

316. The conduct alleged herein violated Jose Ramon Cervantes Conejo's rights alleged above thereby resulting him suffering severe physical, mental and emotional pain, suffering and distress, as well as the loss of those monies that he would have earned in his life, and the loss of the value of his life to him; hedonic damages.

317. The conduct alleged herein violated Jose Ramon Cervantes Conejo's rights alleged above thereby resulted in a deprivation of plaintiff Guadalupe Conejo Ramirez's rights alleged above which has legally, proximately, foreseeably and actually caused plaintiff Guadalupe Conejo Ramirez to suffer the loss of Mr. Conejo's love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support and caused Mr. Conejo emotional distress, pain and suffering, death and further damages according to proof at the time of trial.

318. The actions of said defendants has also caused the loss to plaintiff

Maritza Benitez of the love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support of Jose Ramon Cervantes Conejo, and has caused plaintiff Maritza Benitez to suffer severe physical, mental and emotional distress, pain and suffering, all in an amount in excess of $20,000,000.00, in violation of her right to her familial relationship with her husband pursuant to the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

### SIXTH CAUSE OF ACTION
**Violation of 42 U.S.C. 42 § 1983**
**Successor-in-Interest Claims and Personal Liability Claims for Municipal Liability (Monell Liability[9]), via Failure to Train**
**(By MARITZA BENITEZ, individually and as Successor-in-Interest, and by By Plaintiffs Guadalupe Conejo Ramirez, individually, to Decedent JOSE RAMON CERVANTES CONEJO, Against COUNTY, CITY and NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC)**

319.  Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 318, inclusive, above, as if set forth in full herein.

320.  As set forth above, defendants deprived plaintiffs and decedent CONEJO of their particular rights under the laws of the United States and the United States Constitution.

321.  As set forth above, at all times complained of, the individual defendants were acting under the color of state law.

322.  As a result of the defendants' failure to properly house JOSE RAMON CERVANTES CONEJO; failure to provide proper medical care; and failure to take JOSE RAMON CERVANTES CONEJO to a facility for a 72-hour treatment and evaluation of inebriates, JOSE RAMON CERVANTES

---

[9] *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

CONEJO suffered from alcohol withdrawal and went into serious and obvious medical extremis, which ultimately caused his death.

323.   As a result of the actions and omissions of defendants as shown above, said defendants knew that JOSE RAMON CERVANTES CONEJO faced a substantial risk of suffering serious and severe medical harm, as well as facing a serious medical need, from his alcohol withdrawal.

324.   Accordingly, defendants were deliberately indifferent to Jose Ramon Cervantes Conejo's obvious medical need, as said defendants knew of it and disregarded it by failing to take reasonable measures to address it, to wit; to immediately provide Jose Ramon Cervantes Conejo with proper medical care, including their failure to take him to a facility for a 72-hour treatment and evaluation of inebriates; all in violation of plaintiffs' decedent's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

325.   Defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC acted with deliberate indifference as they have known for many years now that inmates at the San Diego County Jails have been dying from alcohol withdrawal.

326.   Said alcohol withdrawal deaths, have over the years, and at the present time, become so frequent and recurring, that they have become usual and recurring situations with which they must deal with at the San Diego County Jails.

327.   Notwithstanding that defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC have known for many years now that inmates at the San Diego County Jail, have been dying from alcohol withdrawal, have become so frequent and recurring, that they have become usual and recurring situations with which they must deal with, defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC have failed to adequately train police officers, San Diego County Jails deputy sheriffs and its

custodial officers and its deputy aids, nurses, and other jail personnel on recognizing on how to recognize when jail inmates are suffering from severe medical distress that requires immediate medical attention and care, and has failed to train its police officers, deputy sheriff's, custodial officers, and other jail staff and jail medical personnel to immediately summon medical care for inmates who are suffering from severe medical distress and how to properly house such inmates.

328.    COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC and their associate officers and predecessors, was deliberately indifferent to the obvious consequences of its failure to train its police officers, deputy sheriff's, custodial officers, and other jail staff and jail medical personnel officers adequately on recognizing when jail inmates are suffering from severe medical distress that requires immediate medical attention and care, and its failure to train its police officers, deputy sheriff's, custodial officers, and other jail staff and jail medical personnel to immediately summon medical care for inmates who are suffering from severe medical distress, such as when plaintiffs' decedent JOSE RAMON CERVANTES CONEJO suffered such severe and obvious medical distress, including failing to send suspects to a facility for a 72-hour treatment and evaluation of inebriates.

329.    As a direct and proximate result of the actions and omissions of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, plaintiffs suffered severe mental and emotional distress, pain and suffering, and the loss of the love, comfort, society, companionship and familial relationship with plaintiffs' decedent JOSE RAMON CERVANTES CONEJO, as well funeral and burial expenses, hospital and other special damages; all of said injuries and damages to plaintiffs totaling an amount to be proven at trial in excess of $20,000,000.00 for each plaintiff against all defendants.

330.   As a direct and proximate result of the actions and omissions of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, plaintiffs' decedent JOSE RAMON CERVANTES CONEJO suffered severe pre-death pain and suffering, severe pre-death mental and emotional injuries, pain and suffering, other general and special damages, as well as his death, as well as the loss of his life (hedonic damages), as well as lost wages / profits and other income that plaintiffs' decedent JOSE RAMON CERVANTES CONEJO would have earned / made / acquired during his lifetime, the hedonic damages to JOSE RAMON CERVANTES CONEJO caused by the loss of JOSE RAMON CERVANTES CONEJO life, and other special damages; all of said injuries and damages to JOSE RAMON CERVANTES CONEJO totaling an amount to be proven at trial in excess of $20,000,000.00.

331.   Moreover, the conduct alleged herein violated Jose Ramon Cervantes Conejo's rights alleged above thereby resulted in a deprivation of plaintiff Guadalupe Conejo Ramirez's rights alleged above which has legally, proximately, foreseeably and actually caused plaintiff Guadalupe Conejo Ramirez to suffer the loss of Mr. Conejo's love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support and caused Mr. Conejo emotional distress, pain and suffering, death and further damages according to proof at the time of trial.

332.   In addition, the actions of said defendants has also caused the loss to plaintiff Maritza Benitez of the love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support of Jose Ramon Cervantes Conejo, and has caused plaintiff Maritza Benitez to suffer severe physical, mental and emotional distress, pain and suffering, all in an amount in excess of $20,000,000.00, in violation of her right to her familial relationship with

her husband pursuant to the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

## SEVENTH CAUSE OF ACTION
### Failure to Properly Train and Supervise
### (42 U.S.C. § 1983)
### [By the ESTATE OF JOSE RAMON CERVANTES CONEJO by and through its Successor-In-Interest Fabian Cervantes Garcia and MARITZA BENITEZ, individually, and as successor-in-Interest to Decedent JOSE RAMON CERVANTES CONEJO against Supervisory DOE Defendants 1-4]

333. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 332, inclusive, as though set forth in full herein.

334. Defendants DOES 1 through 4 failed to properly train and supervise Defendants MATA; CASTLEBERRY; DAI, PREECHAR and DOES 10-30 in the performance of their duties.

335. Said Defendants failed to properly train their subordinates on how to deal with inmates in medical distress, inmates experiencing alcohol withdrawal and/or inmates suffering from head injuries.

336. Defendants DOES 1 through 4 failed to properly train and supervise their employees with regard to the need to communicate critical medical information to each other.

337. Defendants DOES 1 through 4 failed to properly train and supervise their employees with regard to the treatment of withdrawals and/or severe intoxication and the NCCHC Standards to follow when identifying and treating individuals experiencing withdrawals and/or severe intoxication, including San Diego County Sheriff Policies and Procedures regarding detainees suffering withdrawal.

338. Defendants DOES 1 through 4 failed to properly train and supervise their employees with regard to the treatment of seizures.

339.    Defendants DOES 1 through 4 had a non-delegable duty to ensure that all employees, including Contractor employees were properly trained to meet the needs of their patients.

340.    As a result of Defendant DOES 1 through 4's failures to train and supervise their subordinates, JOSE RAMON CERVANTES CONEJO's medical condition was not properly treated and he was not properly monitored.

341.    JOSE RAMON CERVANTES CONEJO's death was a foreseeable consequence of Defendant DOES 1 through 4's failures.

342.    Defendants DOES 1 through 4 have failed to maintain adequate and proper training necessary to educate deputies and medical staff as to the Constitutional rights of inmates; and to prevent the consistent and systematic failure to provide medical care.

343.    Defendants DOES 1 through 4 knew that failing to monitor a patient going through withdrawal or experiencing severe intoxication could be fatal and/or that failing to immediately transport a patient to the hospital after they sustain a direct blow to the head against a hard surface with a loss of consciousness and obvious signs of a concussion could cause irreparable brain damage or be fatal.

344.    Defendants DOES 1 through 4 have failed to maintain adequate and proper training necessary to educate deputies and medical staff as to the need to monitor patients exhibiting symptoms of serious medical conditions like alcohol withdrawal and/or concussions and/or concussions with loss of consciousness.

345.    Despite repeated Constitutional violations, Defendants DOES 1 through 4 failed to train and supervise doctors, nurses and other staff on the necessary coordination of care of inmates suffering from serious medical conditions like alcohol withdrawal and/or concussions and/or concussions with loss of consciousness.

346.    DOES 1 through 4 failed to train medical doctors, physician assistants

and nurses on the necessary care of inmates suffering from serious medical conditions including severe alcohol intoxication and/or withdrawal and/or concussions and/or concussions with loss of consciousness and they failed to implement policies and procedures with respect to communicating such sensitive and critical information to ensure that inmates will be cared for.

347.   Despite knowledge that critical medical information was not being communicated from the medical staff to sworn staff, DOES 1 to 4 took no action.

348.   Despite their knowledge of previous instances of wrongful deaths in the jails as a result of the failure to communicate critical medical conditions, the failure to provide constant medical monitoring of pre-trial detainees experiencing alcohol withdrawal, the failure to provide necessary medications to treat serious medical conditions, or the failure to immediately summon medical care for inmates with serious head injuries, Defendants DOES 1 – 4 failed to properly supervise, train or retrain their deputies and medical staff to prevent deaths of inmates.  DOES 1 to 4, while acting under color of law, subjected Mr. Conejo and other persons similarly situated to a pattern of conduct consisting of continuing, widespread and persistent patterns of unconstitutional misconduct.  DOES 1 to 4 set in motion a series of acts by  their subordinates, or knowingly refused to terminate a series of acts by their subordinates, that DOES 1 to 4 knew or reasonably should have known would cause the subordinates to deprive Decedent and Plaintiffs of their constitutional rights;

349.   The failure of all supervisory defendants to promulgate or maintain constitutionally adequate training and perform constitutionally adequate supervision was done with deliberate indifference to the rights of JOSE RAMON CERVANTES CONEJO and others in his position.

350.   As a result, decedent Jose Ramon Cervantes Conejo suffered, both physically and mentally, and died.

351.   As a direct consequence of the failure of Defendants to properly train and supervise their officers and medical staff, JOSE RAMON CERVANTES CONEJO suffered unconstitutional treatment during his detention as described above.

352,   As a direct and proximate result of the actions and omissions of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, plaintiffs' decedent JOSE RAMON CERVANTES CONEJO suffered severe pre-death pain and suffering, severe pre-death mental and emotional injuries, pain and suffering, other general and special damages, as well as his death, as well as the loss of his life (hedonic damages), as well as lost wages / profits and other income that plaintiffs' decedent JOSE RAMON CERVANTES CONEJO would have earned / made / acquired during his lifetime, the hedonic damages to JOSE RAMON CERVANTES CONEJO caused by the loss of JOSE RAMON CERVANTES CONEJO life, and other special damages; all of said injuries and damages to JOSE RAMON CERVANTES CONEJO totaling an amount to be proven at trial in excess of $20,000,000.00

353.   As a direct and proximate result of the actions and omissions of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, plaintiffs suffered severe mental and emotional distress, pain and suffering, and the loss of the love, comfort, society, companionship and familial relationship with plaintiffs' decedent JOSE RAMON CERVANTES CONEJO, as well funeral and burial expenses, hospital and other special damages; all of said injuries and damages to plaintiffs totaling an amount to be proven at trial in excess of $20,000,000.00 for each plaintiff against all defendants.

354.   As a direct and proximate result of the actions and omissions of

defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, plaintiffs' decedent JOSE RAMON CERVANTES CONEJO suffered severe pre-death pain and suffering, severe pre-death mental and emotional injuries, pain and suffering, other general and special damages, as well as his death, as well as the loss of his life (hedonic damages), as well as lost wages / profits and other income that plaintiffs' decedent JOSE RAMON CERVANTES CONEJO would have earned / made / acquired during his lifetime, the hedonic damages to JOSE RAMON CERVANTES CONEJO caused by the loss of JOSE RAMON CERVANTES CONEJO life, and other special damages; all of said injuries and damages to JOSE RAMON CERVANTES CONEJO totaling an amount to be proven at trial in excess of $5,000,000.00.

### EIGHTH CAUSE OF ACTION
**Failure to Properly Train and Supervise**
**(42 U.S.C. §1983)**
**[By the ESTATE OF JOSE RAMON CERVANTES CONEJO By and Through Its Successor-In-Interest Fabian Cervantes Garcia and MARITZA BENITEZ, individually, and as successor-in-Interest to Decedent JOSE RAMON CERVANTES CONEJO against Supervisory Doe Defendants 5-9]**

355.  Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 354, inclusive, as though set forth in full herein.

356. Defendants DOES 5 through 9 failed to properly train and supervise defendants MATA; CASTLEBERRY; DAI, PREECHAR and DOES 10 through 30 in the performance of their duties in evaluating physically ill patients who require hospitalization and treatment; assigning appropriate housing for individuals experiencing severe intoxication or withdrawal symptoms and/or head injuries; and/or performing required cell safety checks on physically ill patients who require hospitalization and treatment.

357.  These defendants failed to properly train and supervise their employees

with respect to the dangers of withdrawal and/or concussions and/or concussions with loss of consciousness and the implications for appropriate jail housing and cell safety checks despite their knowledge of the same and their duties to provide such training and supervision.

358.  These defendants knew withdrawal and/or concussion and/or concussions with loss of consciousness symptoms without appropriate medication, housing and monitoring could be fatal and that there had been prior deaths in the County jails arising from such circumstances.

359.  These defendants were aware of the repeated Constitutional violations committed by their subordinates vis a vis a pattern of refusal and/ or delay in providing/summoning medical care, safe housing and performing adequate cell safety checks.

360.  Pursuant to the NCCHC standards and the policies and procedures set by COUNTY, JOSE RAMON CERVANTES CONEJO received grossly inadequate medical care and monitoring despite his visibly life-threatening medical condition.

361.  As a result of the defendants' historical failure to properly train and supervise their employees, Defendants DOES 5 through 9 were deliberately indifferent to the serious medical needs of Decedent.

362.  Defendants DOES 5 through 9 failed to properly train and supervise their subordinates with regard to the need to communicate critical medical information and the need to provide adequate care, housing assignments and monitoring of inmates.  As a result, correctional officers and medical care providers denied/delayed care to Jose Ramon Cervantes Conejo.

363.  As a result of the defendants' historical failure to train and supervise DOES 10 through 30, deputies and nurses continued to endanger the lives of patient/inmates.

364.   As a result, Mr. Conejo was not immediately sent to the hospital upon his entry into VDF; was not provided the medications he required immediately; was not assigned to housing wherein his condition could be closely monitored; either fell multiple times from a height (i.e, top bunk and/or standing and/or sitting positions) and/or had physical injuries from interactions with other inmates due to jail staff failing to provide for Mr. Conejo's physical safety while he was in a particularly vulnerable state; and did not receive appropriate cell safety checks, all of which caused him to sustained severe head injuries and later, death.

365.   Defendants DOES 5 through 9 failed to provide adequate training to, and supervision of, jail staff with regard to proper monitoring and conducting cell checks.  This was despite their knowledge from prior cases that the deputies were failing to conduct proper cell checks and safety checks resulting in violation of inmates' Constitutional rights.

366.   DOES 5 through 9 were aware of previous instances of untimely and wrongful deaths in the San Diego County Jails related to inadequate provision of medical care, improper housing assignments and inadequate cell safety checks and failed to properly train and supervise their employees or agents regarding the same.

367.   There has been an official policy of acquiescence in the wrongful conduct. DOES 5 through 9 failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations.

368.   Defendants DOES 5 through 9 were, or should have been, aware that the policy regarding supervision and training of staff who violated the civil rights of inmates or citizens was so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by their subordinates.

369.   As a result of all DOES 5 through 9's historical failure to properly train and supervise jail staff and jail medical staff, Defendants were deliberately indifferent to the needs of Plaintiff.

370.   The failure to train and supervise was the moving force behind the misconduct of Defendants MATA; CASTLEBERRY; DAI, PREECHAR and DOES 10 through 30, the denial/delay of medical care for Decedent and Decedent's resulting pain, suffering and death.

371.   As a direct and proximate result of the actions and omissions of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, plaintiffs' decedent JOSE RAMON CERVANTES CONEJO suffered severe pre-death pain and suffering, severe pre-death mental and emotional injuries, pain and suffering, other general and special damages, as well as his death, as well as the loss of his life (hedonic damages), as well as lost wages / profits and other income that plaintiffs' decedent JOSE RAMON CERVANTES CONEJO would have earned / made / acquired during his lifetime, the hedonic damages to JOSE RAMON CERVANTES CONEJO caused by the loss of JOSE RAMON CERVANTES CONEJO life, and other special damages; all of said injuries and damages to JOSE RAMON CERVANTES CONEJO totaling an amount to be proven at trial in excess of $20,000,000.00

372.  As a direct and proximate result of the actions and omissions of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, plaintiffs suffered severe mental and emotional distress, pain and suffering, and the loss of the love, comfort, society, companionship and familial relationship with plaintiffs' decedent JOSE RAMON CERVANTES CONEJO, as well funeral and burial expenses, hospital and other special damages; all of said injuries and damages to plaintiffs totaling an

amount to be proven at trial in excess of $20,000,000.00 for each plaintiff against all defendants.

373.   As a direct and proximate result of the actions and omissions of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, plaintiffs' decedent JOSE RAMON CERVANTES CONEJO suffered severe pre-death pain and suffering, severe pre-death mental and emotional injuries, pain and suffering, other general and special damages, as well as his death, as well as the loss of his life (hedonic damages), as well as lost wages / profits and other income that plaintiffs' decedent JOSE RAMON CERVANTES CONEJO would have earned / made / acquired during his lifetime, the hedonic damages to JOSE RAMON CERVANTES CONEJO caused by the loss of JOSE RAMON CERVANTES CONEJO life, and other special damages; all of said injuries and damages to JOSE RAMON CERVANTES CONEJO totaling an amount to be proven at trial in excess of $5,000,000.00.

**NINTH CAUSE OF ACTION**
**Violation of 42 U.S.C. 42 § 1983**
**Successor-in-Interest Claims and Personal Liability Claims for Municipal Liability (Monell Liability[10]), via Policy Created By Longstanding Custom & Practice & Failure to Protect Inmates and Failure to Discipline Jail Personnel**
**(By the ESTATE OF JOSE RAMON CERVANTES CONEJO By and Through Its Successor-In-Interest Fabian Cervantes Garcia; GUADALUPE CONEJO RAMIRES, individually; MARITZA BENITEZ, individually and as Successor-in-Interest to Decedent JOSE RAMON CERVANTES JONEJO, Against COUNTY, CITY and NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC and DOES 31-35)**

374.   Plaintiffs hereby reallege and incorporate by reference the allegations

---

[10] *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

set forth in paragraphs 1 through 373, inclusive, above, as if set forth in full herein.

375. As set forth above, at all times complained of herein, the individual defendants were acting under the color of state law.

376. As set forth above, at all times complained of herein, the individual defendants violated plaintiff's and decedents' constitutional rights while acting under the color of state law and acting within the course and scope of their employment with defendants CITY, COUNTY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC.

377. Prior to this incident, COUNTY OF SAN DIEGO, NAPHCARE, INC., and NAPHCARE OF SAN DIEGO, LLC were aware of other incidents of the failure to render emergent medical care to seriously ill inmates in San Diego County jails. For example:

    a. *Estate of Elisa Serna et al v. County of San Diego, et al*. United States District Court for the Southern District of California, Case No. 20-cv-2096-LAB-MSB wherein a 24-year-old woman died on November 11, 2019, while in a San Diego County jail medical observation unit while suffering from alcohol withdrawal symptoms including frequent vomiting and seizures. The County of San Diego settled the case which included claims related to deliberate indifference to medical needs for $15 Million dollars.

    b. *Frankie Greer v. County of San Diego, et al.,* United States District Court for the Southern District of California, Case No. 3:19-cv-00378-GPC-DEB wherein an inmate suffering from a seizure disorder and who was deprived of his anti-seizure medications, sustained a serious head injury on February 1, 2018, after falling from the top bunk in his cell while housed in a San Diego County jail. The County of San Diego settled the case for $7.75 Million Dollars.

    c. *Estate of Daniel Sisson, et al., v. County of San Diego, et al.*, United States District Court for the Southern District of California, Case No. 12-cv-1428-LAB-BGS involved the June

25, 2011, death of Daniel Sisson who died from an acute asthma attack made worse by drug withdrawal while housed at the Vista Detention Facility. A jury awarded Plaintiff $3 Million Dollars on claims that San Diego County jail staff were deliberately indifferent to Mr. Sisson's health problems resulting in his death.

d.  *Alba Marroquin De Portillo v. County of San Diego, et al.*, United States District Court for the Southern District of California, Case No. 3:23-cv-00978-WQH-VET involved pretrial detainee Lester Daniel Marroquin who died on May 30, 2021, in a San Diego County jail administrative segregation cell due to acute water intoxication.

e.  *Dunsmore v. San Diego County Sheriff's Department et al*, United States District Court for the Southern District of California, Case No 20-cv-00406-AJB involves a Class Action for Declaratory and Injunctive Relief related to San Diego County jail inmates not being adequately screened for medical needs and not timely receiving essential medication or treatment.

f.  *Victorianne v. County of San Diego*, United States District Court for the Southern District of California, Case No. 3:14-cv-02170-WQHBLM in September 2012 pretrial detainee Bernard Victorianne suffered for five days in a San Diego County jail from a drug overdose because jail staff ignored his medical information that he had ingested a baggie of methamphetamine, and that he was to return to the hospital immediately if he became symptomatic of overdose. Bernard Victorianne was placed in segregation instead of Medical, where he was found dead in his cell. Staff failed to report symptoms of overdose or take Mr. Victorianne immediately to the hospital. The County of San Diego settled the case on August 2, 2016, for $2.3 Million Dollars.

g.  *Rainey v. County of San Diego, et al.,* United States District Court for the Southern District of California Case No.: 3:19-cv-01650 DMSSBC relates to pretrial detainee Colleen Garot who was denied immediate medical care for a head injury while

Case 3:25-cv-01823-TWR-DDL    Document 20    Filed 02/19/26    PageID.500    Page 79 of 112

housed in a San Diego County jail. On April 14, 2018, she fell from a top bunk at the Vista Detention Facility and sustained a further head injury requiring immediate medical attention but was not provided medical care and instead was transferred to another San Diego County jail. Due to this delay and denial of medical care, Ms. Garot suffered a stroke which resulted in permanent brain damage. In 2023 the County of San Diego settled with Plaintiff for $9.5 Million Dollars.

h.      From 2006 through 2020, a total of 185 people died in San Diego County's jails—a rate higher than any other large county across the State.

i.      In February 2022, the California State Auditor completed its audit of the San Diego County Sheriff's Department to determine the cause of the high rate of in-custody deaths in San Diego County jails.[11] The Auditor found deficiencies in caring for and protecting individuals, which likely contributed to in-custody deaths and that the deficiencies were related to the provision of medical care and performance of visual checks. The audit's findings "suggest[ed] that the problems with the Sheriff's Department's care for incarcerated individuals are systemic." The auditor's review of 30 individuals' deaths from 2006 through 2020 found that some of the individuals had serious medical or mental health needs that the Sheriff's Department's health staff did not identify during the intake process. Auditors noted that studies regarding health care at correctional facilities indicate that identifying individuals' health needs at intake is critical to ensuring their safety in custody.

j.  Although Naphcare, Inc./Naphcare of San Diego, LLC's contract with the County of San Diego began in 2023, Naphcare, Inc. has

_____

[11] https://www.auditor.ca.gov/pdfs/reports/2021-109.pdf

FIRST AMENDED CONSOLIDATED COMPLAINT

72

provided medical services to jails throughout the United States for many years. NAPHCARE, INC. and NAPHCARE OF SAN DIEGO, LLC, were aware of other prior incidents of a pattern and practice of failing to render emergent medical care to seriously ill inmates in jails both within San Diego County and beyond.  For example:

(1) *Estate of Brandon Yates v. County of San Diego* (United States District Court, Southern District of California) Case No.: 25-cv-0410-W-MMP: County of San Diego recently sued Naphcare, Inc., and Naphcare San Diego, LLC related to the jail death case involving Brandon Yates in January 2024 where the underlying lawsuit asserts deliberate indifference to medical needs among other claims.  See: https://www.sandiegouniontribune.com/2025/09/27/in-rare-move-san-diego-county-sues-its-own-jail-healthcare-providers-over-brutal-cellmate-killing/; See also, *Estate of Brandon Yates v. County of San Diego*, *et al*, Case No: 25-cv-0410-W-MMP, Dkt. 60, ¶31 filed 1/27/2026 in the Southern District of California wherein COUNTY OF SAN DIEGO alleges in its Cross-Claim against Naphcare, Inc. and Naphcare of San Diego, LLC that "If the County bears any liability to Plaintiff, which the County denies, the County's liability is secondary and Crossclaim Defendants are primarily liable. Crossclaim Defendants' liability is based upon their alleged negligent and wrongful conduct in providing medical and mental healthcare services in the context of their interactions with Alvin Ruis, including in observing, examining, and/or evaluating Alvin Ruis, and in allegedly failing to meet the appropriate standard of care in addressing symptoms and communicating with jail staff regarding the risks that Alvin Ruis posed to himself and others.";

(2) *Estate of Keith Bach v. County of San Diego*, *et. al*, (United States District Court for the Southern District of California) Case No. 3:24-cv-01687:  wherein Naphcare, Inc. and Naphcare of San Diego, LLC are named defendants relates to the September 2023 death of Keith Bach in a San Diego

FIRST AMENDED CONSOLIDATED COMPLAINT
73

County jail on claims related to deliberate indifference to medical needs (diabetic condition – not providing insulin medication) in which the medical examiner classified Mr. Bach's death a homicide;

(3) *Essex v. Naphcare, Inc.* – *(*United States District Court for the Southern District of California) Case No.: 24CV0763 -L-VET – relates to the death of pre-trial detainee Delbert Essex who was suffering from alcohol intoxication/withdrawal as well as insulin-dependent diabetes.  Despite unstable vital signs, medical staff failed to summon an ambulance to have Mr. Essex transported to the hospital and instead permitted Mr. Essex to be transported out of the jail by squad car and without first providing hydration or insulin to Mr. Essex or stabilizing his vital signs.  Mr. Essex was later found deceased in a nearby motel on or about June 22nd or 23rd, 2023 when deputies abandoned Mr. Essex somewhere outside the hospital rather than taking him into the hospital

(4) *Est. of Hill v. NaphCare, Inc*., 2025 U.S. App. LEXIS 13773, *12 (9th Cir. June 5, 2025) In 2018, a jury awarded $2.75 million in total compensatory damages and held NaphCare and Spokane County jointly and severally liable for this amount. The jury also awarded $24 million in punitive damages against NaphCare (later reduced following an appeal)  Although Cindy Lou Hill was experiencing severe abdominal pain, NaphCare employees failed to transfer her to the hospital and instead put her in the Jail's "medical watch" area instead of providing her with necessary care.  The Appellate Court held that the jury could have reasonably concluded from the evidence that NaphCare routinely sent people with serious, potentially fatal, conditions to medical watch for monitoring by medically untrained guards.  See also *Est. of Hill by & through Grube v. NaphCare, Inc.,* 2023 WL 6297483, at *11 (denying NaphCare's motion for a judgment as a matter of law and motion for a new trial because "the jury was presented evidence sufficient to conclude that NaphCare's custom of sending patients in need of medical monitoring to medical

FIRST AMENDED CONSOLIDATED COMPLAINT
74

watch, or, as NaphCare suggests, leaving them in their original cells, created a substantial risk that those patients would die from their illnesses").

(5) *Bowen v. Clark Cty.*, USDC (W.D. Wash.), Case No. 3:24-cv-05123 -   NaphCare, Inc. settled with Plaintiffs for an undisclosed amount on a claim relating to deliberate indifference to serious medical needs where decedent Jessie Booth was detoxing from fentanyl and began exhibiting increasingly bizarre behavior. Decedent Booth's behavior was ignored until he climbed atop a metal sink and dived head-first onto the concrete floor, suffering a fatal spinal injury.

(6) *Rapp v. NaphCare, Inc.* (United States District Court, Western Dist. Washington) Case No.:  3:21-cv-05800-DGE – involved the January 2, 2020 death of pre-trial detainee Nicholas Rapp by suicide while he was experiencing withdrawal from alcohol and opioid use that was inadequately treated by Naphcare and its employees. Plaintiffs settled with Naphcare and the public entity defendants for $2.75 Million.

(7) *Tapia v. NaphCare, Inc.*, (United States District Court, Western Dist. Washington) Case No.: C22-1141-KKE - On April 4, 2025, a jury in the U.S. District Court for Western Washington found that NaphCare, Inc. deprived Javier Tapia of his right to adequate medical care and proved that NaphCare had a "widespread or longstanding custom" of care that was the moving force that caused Tapia's injury. The jury awarded Javier Tapia  $25 Million – comprised of $5 million in compensatory damages and $20 million in punitive damages for the 2018 incident wherein Naphcare and its employees failed to address a serious blood clot that led to the amputation of Mr. Tapia's leg.

(8) Inzunza v. Naphcare, Inc., (United States Dist. Ct. Dist. Of Arizona) Case No.: CV-22-00512-TUC-SHR - was a lawsuit filed against Naphcare, Inc., among others, on November 8, 2022 and which involved the death of pre-trial detainee

FIRST AMENDED CONSOLIDATED COMPLAINT

Sylvestre Miguel Inzunza on February 2, 2022, who died of a Fentanyl overdose in jail when Naphcare medical professionals failed to monitor him.

*(9)* In a 2019 article written by Tara Herivel entitled "Profits and Preventable Deaths in Oregon Jails" (STREET ROOTS, Jan. 18, 2019) available at:
https://www.streetroots.org/news/2019/01/18/profits-and-preventable-deaths-oregon-jails
Ms. Herivel writes that "NaphCare has a disturbing and recent history of prisoner deaths for lack of medical care across the country." The article identifies several cases where NaphCare was sued including, a lawsuit brought by the parents of Matthew Smith, a 48-year-old man with Crohn's disease who died of a sepsis infection in a Tacoma, Wash., jail in 2016. The lawsuit alleged NaphCare failed to give him his medications or notice his worsening symptoms. Just before he died, blood work showed severe kidney failure.

378. COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC maintained a long-standing unconstitutional policy, custom, and/or practice which allowed its officers, deputies and medical staff to delay and/or deny medical care to inmates.

379. There were longstanding and systemic deficiencies in the San Diego County jail system. Such deficiencies included inadequate medical intake, lack of required training or screening, inadequate diagnosis and treatment of medical conditions, improper housing for inmates with serious medical needs, inadequate safety checks for inmates with serious medical needs, lack of communication of necessary critical medical information among staff, inadequate medical staffing and non-compliant policies and procedures as evidenced by the multiple prior incidents of denied and/or delayed medical care alleged above.

a.   There was a *de facto* policy of allowing San Diego County jail staff to fail to render care to patients going through withdrawal and ignoring obvious and dangerous symptoms such as persistent vomiting and delirium.

b.   There was a de facto policy of leaving patients like Mr. Conejo unattended in their cells who are vomiting, have seizure conditions or are going through withdrawal.  This was despite Medical staff knowing that vomiting could be a sign of a serious medical condition.

c.   The County, Naphcare, Inc., Naphcare San Diego, LLC and DOES 31-35's failure to train deputies and medical staff on treatment of inmates in medical distress gives inference of a municipal custom that authorized or condoned deputy and/or medical staff misconduct

d.   Upon information and belief, the permanent, widespread, well-settled practice or custom of Defendants County, Naphcare, Inc., Naphcare San Diego, LLC and DOES 31-35 was to deny treatment to inmates in serious medical distress and to place inmates in inappropriate housing not suited to their medical need

e.   There was a custom and practice of not properly screening inmates for medical care or treatment.

f.   There was a custom and practice of failing to communicate the medical needs of inmates between the medical staff and deputies.

g.   There was a custom and practice of not properly checking on the welfare of inmates, even those inmates known to have serious medical needs.

h.  There was a custom and practice of failing to conduct proper cell checks as required by County's own written policies

i.  There was a custom and practice of not properly investigating misconduct of deputies and medical staff.

j.  There was a custom and practice of County interfering with investigations by withholding and/or concealing material information, particularly from victims' families despite repeated requests for production of investigation documentation.

k.  There were longstanding and systemic deficiencies in San Diego County jails of failing to investigate in-custody deaths and/or in-custody catastrophic injuries leading to the death of an inmate outside of custody

l.  The training policies of Defendant County, Naphcare, Inc., Naphcare San Diego, LLC and DOES 31-35 were not adequate to train medical staff to handle the usual and recurring situations with which they must deal, including: (1) providing proper protocol for patients going through withdrawal; and (2) seeking immediate medical and psychiatric care for inmates in obvious distress.

m.  Treating patients going through withdrawal is a usual and recurring situation in the San Diego County Jails.

n.  Defendants COUNTY; NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; and DOES 31 – 35  were deliberately indifferent to the widespread unconstitutional acts by its jail staff and failed to set forth appropriate policies regarding the treatment of inmates. The COUNTY; NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; and DOES 31 – 35  knew their failure to adequately train their staff made it highly predictable that its jail

staff would engage in conduct that would deprive persons such as JOSE RAMON CERVANTES CONEJO of his rights

o.   During the relevant period, all Defendant deputies, medical staff, and Does 1-30 were acting pursuant to the policies of Defendant COUNTY; NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; and DOES 31 – 35

p.   Defendants were aware of the following:  that San Diego County had the highest mortality rate among California largest jail systems; that there had been countless complaints made by inmates, family members, community members and the Jail's own staff regarding injuries caused by medical neglect and staff misconduct; and that failures to communicate critical medical information to coordinate care for inmate-patients with serious medical needs led to the deaths and/or serious injuries of Elisa Serna, Daniel Sisson, Bernard Victorianne, Frankie Greer, Lester Daniel Marroquin, Colleen Garot and many other patients in San Diego County jails.  Similarly, NAPHCARE, INC., and NAPHCARE OF SAN DIEGO, LLC have had a longstanding custom/practice of being deliberately indifferent to the medical needs of inmates both within San Diego County and beyond, as demonstrated by the deaths of Brandon Yates, Keith Bach, Delbert Essex, Cindy Lou Hill, Jessie Booth, Nicholas Rapp, Javier Tapia and Sylvestre Miguel Inzunza, among others.  Many of the deaths involved a failure to provide necessary medications and/or treat withdrawal symptoms

q.   Defendants COUNTY; NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; and DOES 31 – 35 were deliberately

indifferent to the right of the plaintiffs and others to be free from, and protected from, harm by the misconduct of its employees

r.  The Sheriff Department's longstanding practice or custom was unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm to inmates

380.  Defendants were deliberately indifferent to that serious risk of serious physical harm posed to Jose Ramon Cervantes Conejo by their conduct complained of above, and said defendants knew of it and disregarded it by failing to take reasonable measures to address it.

381.  COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC maintained a long-standing unconstitutional policy, custom, and/or practice of failing to comply with Cal. Penal Code § 647(g) which requires that anyone arrested for a violation of Cal. Penal Code § 647(f) be taken to a facility for a 72-hour hold for the treatment and evaluation of inebriates pursuant to Cal. Welf & Inst Code § 5170.

382.  The long-standing unconstitutional policy, custom, and/or practice of COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC was to book persons whom were suspected of violating Cal. Penal Code § 647(f) at the County Jails rather than complying with Cal. Penal Code § 647(g).

383.  In the matter *Luque-Villanueva v. County of San Diego*, et al., United States District Court for the Southern District of California, Case Number 16-cv-2945-GPC, the person most knowledgeable about Cal. Penal Code § 647(f) arrests at the San Diego County Sheriff's Office, Lieutenant Richard Williams, testified at his deposition that he was completely unaware of the

requirements of Cal. Penal Code § 647(g) and that San Diego County Sheriff's Office deputy sheriffs are trained only to take persons arrested for violation of Cal. Penal Code § 647(f) for alcohol intoxication only are to jail, and not into civil protective custody to a facility for the treatment of inebriates pursuant to Cal. Welf & Inst Code § 5170.

384.   As a proximate result of the actions and omissions of defendants as complained herein and otherwise above, plaintiffs' decedent Jose Ramon Cervantes Conejo, died.

385.   The policies and long-standing customs and practices of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC, as complained of above, proximately caused plaintiffs and decedent Jose Ramon Cervantes Conejo to suffer severe mental and emotional distress, pain and suffering, and the loss of the love, comfort, society, companionship and familial relationship as well funeral and burial expenses, hospital and other special damages; all of said injuries and damages in an amount to be shown at trial. Defendants' aforementioned policies, customs, or practices, actions and failures to act including, Defendants' failure to train and supervise its employees, caused Mr. Conejo's deprivation of rights by the individual defendants. That is, Defendants' policies, customs, or practices, actions and failures to act were so closely related to Mr. Conejo's deprivation of rights that they were the moving force causing Mr. Conejo's injuries and death, as well as Plaintiffs' economic and non-economic damages.

386.   Also, as a direct and proximate result of the actions and omissions of defendants COUNTY, CITY, NAPHCARE, INC. and NAPHCARE SAN DIEGO, LLC plaintiffs' decedent Jose Ramon Cervantes Conejo also suffered severe physical, mental and emotional distress, pain and suffering. lost wages / profits and other income that plaintiffs' decedent Jose Ramon Cervantes Conejo would have earned / made / acquired during his lifetime, the hedonic damages to Jose Ramon Cervantes Conejo caused by the loss of Jose Ramon Cervantes Conejo's life, funeral and burial expenses, hospital and other medical expenses and costs, and other special damages; all of said injuries and damages to JOSE RAMON CERVANTES CONEJO totaling an amount to be shown at trial in excess of $20,000,000.00.

387.   Moreover, the conduct alleged herein violated Jose Ramon Cervantes Conejo's rights alleged above thereby resulted in a deprivation of plaintiff Guadalupe Conejo Ramirez's rights alleged above which has legally, proximately, foreseeably and actually caused plaintiff Guadalupe Conejo Ramirez to suffer the loss of Mr. Conejo's love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support and caused Mr. Conejo emotional distress, pain and suffering, death and further damages according to proof at the time of trial.

388.   In addition, the actions of said defendants has also caused the loss to plaintiff Maritza Benitez of the love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support of Jose Ramon Cervantes Conejo, and has caused plaintiff Maritza Benitez to suffer severe physical, mental and emotional distress, pain and suffering, all in an amount in

excess of $20,000,000.00, in violation of her right to her familial relationship with her husband pursuant to the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

## TENTH CAUSE OF ACTION
### Wrongful Death – CCP § 377.60 *et seq*[12].
### By Plaintiffs GUADALUPE CONEJO RAMIREZ and MARITZA BENITEZ, both individually against All Defendants[13]

---

[13] Plaintiff's Maritza Benitez and Joe Alberto Quintero's Government Tort Claims against the County of San Diego on September 24, 2024. At that time, plaintiffs Maritza Benitez and Joe Alberto Quintero and their counsel had heard second hand from a third party witness that the arresting Escondido Police Department police officer who arrested plaintiffs' decedent, Jose Ramon Cervantes Conejo, had brutalized him. Thereafter, the Benitez-Quintero plaintiffs obtained medical records of Jose Ramon Cervantes Conejo that showed that he suffered a "... skull fracture, an orbital fracture, and both subarachnoid hemorrhage and subdural hemorrhages around the brain. This was described as a "high complexity comprehensive trauma." That is the universe of what the Benitez/Quintero plaintiffs knew when they filed their Government Tort Claims for Damages on September 24, 2025.Therefore, when the Benitez-Quintero plaintiffs filed their California Government Tort Claims for Damages with the County of San Diego and the City of Escondido, a true and correct copy of the same being filed as Exhibit "A" along with this instant First Amended Consolidated Complaint, all that the Benitez/Quintero plaintiffs knew was that plaintiff's decedent, Jose Ramon Cervantes Conejo, was arrested by the Escondido Police Department (defendant police officer James Albergo) or by the San Diego County Sheriff's Department (Benitez/Quintero plaintiffs had been told different versions of the arresting agency from third-party witnesses) and was taken to the Vista Detention Facility Jail, and ended up with a "... skull fracture, an orbital fracture, and both subarachnoid hemorrhage and subdural hemorrhages around the brain", and that he was taken to the hospital and died from the head injuries two weeks later. Therefore, when Benitez/Quintero plaintiffs filed their original Complaint for Damages in this instant action on May 5, 2025, Case Number 3:25-cv-01143-TWR-DDL [Civil Docket Item 1] they only alleged that plaintiffs' decedent, Jose Ramon Cervantes Conejo, was subjected to excessive force by Escondido Police Department police officer James Albergo and by some unknown person(s) at the Vista Detention Facility. Thereafter, plaintiff Benitez-Quintero's counsel, Jerry L. Steering, was contacted by the lawyer for the other set of plaintiffs in this case, Maurizio A. Mangini, and was informed that the arresting officer was Escondido Police Officer James Albergo, and that the Vista Detention Facility staff failed to provide medical treatment to plaintiff's decedent, and that he died from the jail staff failing to provide or to summon emergency medical care for plaintiff's decedent. Thus, the only excessive force claim alleged in plaintiff's original Complaint for Damages was against James Albergo and the City of Escondido; not any County of San Diego deputy sheriff or other San Diego County employee. [Civil Docket Item 1, p.25]. Benitez/Quintero Plaintiffs also made

389.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 388, above, as though set forth in full herein.

390.    Plaintiffs allege all California state law claims as basis for state law wrongful death cause of action and incorporate later torts by reference.

391.    Defendants committed wrongful acts which proximately caused the death of Jose Ramon Cervantes Conejo, including failing to provide medication for

---

allegations in their Complaint for Damages against the County of San Diego for Wrongful Death in their Original Complaint for Damages that Vista Detention Facility staff failed to provide emergency medical care or any care for plaintiffs' decedent when he was in obvious need of such medical care in their Seventh Cause of Action for Wrongful Death [Civil Docket Item 1, p.25]. That claim was dismissed by this Honorable Court in its January 29, 2026 Order on the County of San Diego's Motion to Dismiss the Benitez-Quintero's Complaint. [Civil Docket Item 66]. However, due to a discovery dispute over the Protective Order issued in this case on December 22, 2025 [Civil Docket Item 58], Benitez/Quintero plaintiffs' counsel did not receive the video recordings of what actually happened to plaintiff's decedent in the Vista Detention Facility until February 2, 2026. When Benitez/Quintero plaintiffs counsel received those Jail Video Recordings, Benitez/Quintero's plaintiffs' counsel for the first time became aware of the allegations set forth above in this First Consolidated Amended Complaint showing that in the Medical Clearance for Booking / Booking area of the Vista Detention Facility that plaintiffs' decedent fell on his head and fractured his face and skull, and, that he may have thereafter again fallen and suffered more head trauma, that resulted in his ultimate death two weeks after having been taken from the Jail to the hospital. Accordingly, plaintiff Benitez is in the process of filing another Claim for Damages with both the County of San Diego and the City of Escondido to show the allegations shown above as to how and why plaintiffs' decedent died from the head fractures, how the County failed to properly screen plaintiffs' decedent for booking and how the County and Office Albergo failed to render him or summon emergency medical care for him, and how he was housed in a dangerous manner at the jail, that resulted in his death. Therefore, plaintiff is including those California state law claims in this instant First Amended Consolidated Complaint, subject to filing those new California Tort Claims for Damages against the County of San Diego and the City of Escondido based on the delay discovery of how and why plaintiffs' decedent actually died, and what tortious actions and omissions by those entities resulted in his death.  Garcia/Ramirez Plaintiffs will be filing a government tort claim with City of Escondido as to the City, and Escondido Police Department Officer DOE 36 whom the Garcia/Ramirez plaintiffs learned for the first time on January 16, 2026 that DOE 36 witnessed Mr. Conejo sustain a skull fracture while in the medical intake/booking area and did not summon medical care for Mr. Conejo. Plaintiffs will also be filing a Motion for Reconsideration of this Honorable Court's Order dismissing plaintiffs' California State Law claim against defendant County of San Diego, to justify the inclusion of those claims in this pleading.

FIRST AMENDED CONSOLIDATED COMPLAINT

alcohol withdrawals by plaintiffs' decedent, failing to provide immediate medical care for plaintiffs' decedent who was in obvious severe medical extremis, failing to properly medically screen plaintiffs' decedent for booking, failing to house plaintiffs' decedent in a safe jail cell for someone in his condition, failing to take plaintiffs' decedent to the hospital instead of housing him in the jail, failing to make frequent cell safety checks on plaintiffs' decedent, and failure to take plaintiffs' decedent to a facility for the treatment of inebriates, among other things.

392.    Specifically, defendants deprived Jose Ramon Cervantes Conejo of his rights under the United States Constitution to be free unreasonable seizures of his person, to be provided emergency medical care while in police custody, and not to be subjected to a dangerous condition of confinement that resulted in injury to him.

393.    Defendants various acts/omissions complained of above were a substantial factor in causing JOSE RAMON CERVANTES CONEJO's death.  It was reasonably foreseeable that failure to properly treat JOSE RAMON CERVANTES CONEJO's severe intoxication and withdrawal symptoms, including his seizure history would cause his death.

394.    California Government Code § 845.6 creates an affirmative duty for jail officials "to furnish or obtain medical care for a prisoner in his custody."  JOSE RAMON CERVANTES CONEJO required prompt medical attention from Defendants. Defendants MATA; CASTLEBERRY; DAI, PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36, and DOES 10 through 36 had actual or constructive knowledge of Mr. Conejo's need for prompt medical attention and deliberately chose to not furnish care.

395.    Defendants also failed to discharge the duty imposed upon them by California Government Code § 845.6.

396.  The supervisory defendants DOES 1 through 9's failure to train and supervise and to set proper policies on withdrawal and medical care proximately caused the misconduct of their subordinates.

397.  Supervisory defendants DOES 1 through 9 failed to train and supervise their employees/agents on proper cell checks, proper housing assignments for ill inmates and on providing medical care to inmates in medical distress.

398.  This failure proximately caused the employees/agents to ignore Jose Ramon Cervantes Conejo whose medical condition continued to decline and who sustained severe head injuries and later death from multiple falls while at VDF from a height (i.e, either falling from a top bunk and/or standing position and/or sitting position) and/or physical injuries from interactions with other inmates due to jail staff failing to provide for Jose Ramon Cervantes Conejo's physical safety and placing Jose Ramon Cervantes Conejo in housing that was unsafe for his medical needs.

399.  CITY, NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; COUNTY OF SAN DIEGO and DOES 31 through 35'S failure to train and supervise its employees proximately caused the failure to treat Jose Ramon Cervantes Conejo who was gravely ill.

400.  As a direct and proximate result of Defendants' acts and/or omissions complained of above, described herein, Jose Ramon Cervantes Conejo suffered severe physical, mental and emotional injury, pain, suffering and distress, and ultimately died.

401.  These acts resulted in the death of JOSE RAMON CERVANTES CONEJO.

402.   CITY, NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; AND DOES 31 through 35 are also responsible for the acts of individual Doe defendants under the theory of *respondeat superior*.

403.   Accordingly, defendants breached their duty of due care that they owed to Plaintiffs' decedent Jose Ramon Cervantes Conejo, under Cal. Civ. Proc Code § 377.60, under Cal. Civil Code § 1714, Cal. Gov't Code § 845.6 and were deliberately indifferent to Jose Ramon Cervantes Conejo's obvious medical need, as said defendants knew of it and disregarded it by failing to take reasonable measures to address it, to wit; to immediately summon medical care for JOSE RAMON CERVANTES CONEJO.

404.   Accordingly, the actions and omissions of defendants were a proximate cause of JOSE RAMON CERVANTES CONEJO's death, and make them liable to plaintiffs, individually, for the wrongful death of plaintiffs' decedent, CONEJO, under Cal. Civ. Proc. Code § 377.60.

405.  Moreover, defendant County of San Diego is liable to plaintiffs via Cal. Gov't Code §§ 815.2 and 820 via respondeat superior.

406.   Moreover, the conduct alleged herein violated Jose Ramon Cervantes Conejo's rights alleged above thereby resulted in a deprivation of plaintiff Guadalupe Conejo Ramirez's rights alleged above which has legally, proximately, foreseeably and actually caused plaintiff Guadalupe Conejo Ramirez to suffer the loss of Mr. Conejo's love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support and caused Mr. Conejo emotional distress, pain and suffering, death and further damages according to proof at the time of trial.

406.   In addition, the actions of said defendants has also caused the loss to

plaintiff Maritza Benitez of the love, companionship, comfort, care, assistance, protection, affection, guidance, gifts, and financial support of Jose Ramon Cervantes Conejo, and has caused plaintiff Maritza Benitez to suffer severe physical, mental and emotional distress, pain and suffering, all in an amount in excess of $20,000,000.00, in violation of her right to her familial relationship with her husband pursuant to the substantive due process clause of the Fourteenth Amendment to the United States Constitution.

407.  In addition, the actions of defendants were done maliciously and oppressively, sufficient for an award of punitive damages against defendants, save for defendants CITY and COUNTY, in an amount to be proven at trial in excess of $20,000,000.00 for each plaintiff.

**ELEVENTH CAUSE OF ACTION**
**Negligence**
**Cal. Civil Code § 1714**
**[By ESTATE OF JOSE RAMON CERVANTES CONEJO By and Through Its Successor-In-Interest Fabian Cervantes Garcia; GUADALUPE CONEJO RAMIREZ, individually, and MARITZA BENITEZ, individually and as successor-in-interest, to Decedent JOSE RAMON CERVANTES CONEJO, against All Defendants[14]**

408.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 407, above, as though set forth in full herein.

409.   All Defendants had a duty to Jose Ramon Cervantes Conejo to act with ordinary care and prudence so as not to cause harm or injury to another.

410.   Defendants improperly, negligently, wrongfully, and recklessly failed to document or communicate Jose Ramon Cervantes Conejo's serious medical

---

[14] See footnote 11, above as to why plaintiffs are inserting their state law claims against defendant County of San Diego.

conditions.

411.  They also negligently and carelessly examined, diagnosed, treated, failed to treat, and negligent medically screened Jose Ramon Cervantes Conejo for booking, and negligently failed to properly manage his care at the VDF Jail so as to allow and cause the damages as alleged herein.  The negligence and carelessness of defendants consisted of their failure to use that degree of skill and care ordinarily used by healthcare professionals engaged in the practice of their profession in the same or similar locality and under the same or similar circumstances, as described in detail above.

412.  Defendants also improperly, negligently, wrongfully, and recklessly failed to provide proper housing where JOSE RAMON CERVANTES CONEJO could be monitored.

413. Defendants  MATA;  CASTLEBERRY;  DAI;  PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36, and DOES 10 through 36 improperly, negligently, wrongfully, and recklessly failed to take appropriate action to monitor Jose Ramon Cervantes Conejo despite his obvious symptoms of being in serious medical distress.

414.  Defendants  MATA;  CASTLEBERRY;  DAI;  PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36 and DOES 10 through 36, inclusive,  improperly, negligently, wrongfully, and recklessly failed to place Mr. Conejo in proper housing where he could be closely monitored and, on information and belief, failed to place him in a medically required low bunk.

415.  Defendants  MATA;  CASTLEBERRY;  DAI;  PREECHAR, ALBERGO, ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36  and DOES 10 through 36, inclusive, improperly, negligently, wrongfully,  and recklessly delayed and failed to summon medical care to Jose Ramon Cervantes

Conejo who was in obvious physical distress and in acute need of urgent medical care with his skull and face fractures that happened at the VDF Jail in said defendants' presence and otherwise.

416.   The supervisory defendants DOES 1 through 9, inclusive, were well aware of the numerous failures of their subordinates with regard to proper screening, evaluation, treatment, housing placement needs and transportation of inmates suffering from a serious medical condition to a hospital.

417.   Despite this knowledge, supervisory defendants DOES 1 through 9, inclusive, improperly, negligently, wrongfully, and recklessly failed to set forth policies to remedy these failures.

418.   Supervisory defendants DOES 1 through 9, inclusive, improperly, negligently, wrongfully, and recklessly failed to ensure that all patients going through withdrawal receive a treatment plan, appropriate evaluation by a physician, withdrawal medications and continuity of care, despite their knowledge that their subordinates' failures had resulted in needless deaths of multiple inmates going through withdrawal and despite their knowledge that the vast majority of inmates booked into the jail had recent alcohol or drug use.

419.   All defendants improperly, negligently, wrongfully, and recklessly failed to refrain from violating Plaintiff's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

420.   By engaging in the acts alleged herein, defendants failed to act with ordinary care and breached their duty of care owed to JOSE RAMON CERVANTES CONEJO.

421.   NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; AND DOES 31 through 35 are responsible for the acts of individuals and DOE defendants under the theory of *respondeat superior*.

422.    Plaintiffs are informed and believe that NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; AND DOES 31 through 35 maintained policies, practices and procedures that allowed for and encouraged the denial/delay of care which ultimately caused the death of Jose Ramon Cervantes Conejo.

423.    These policies, practices and procedures include without limitation defendants' training procedures and practices with respect to supervision of the staff and policies and procedures with regard to providing necessary critical and urgent medical attention.

424.    NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; AND DOES 31-35 also negligently hired, screened, trained, retained, supervised, disciplined and/or controlled jail and medical staff at Vista Detention Facility, including VDF medical staff MATA; CASTLEBERRY; DAI; PREECHAR and DOES 10 through 30.

425.    By engaging in the acts alleged herein, all defendants failed to act with ordinary care and breached their duty of care owed to JOSE RAMON CERVANTES CONEJO. In addition, as shown above, defendants breached their duty that they owed to plaintiffs' decedent by not immediately taking him to a facility for the treatment of inebriates pursuant to Cal. Penal Code § 647(g).

426.    As a further proximate result of the Defendants' negligent conduct, JOSE RAMON CERVANTES CONEJO died.

427.    As a direct and proximate result of the defendants' negligent conduct as herein described, Jose Ramon Cervantes Conejo suffered great personal injury and severe physical, mental and emotional pain, suffering and distress in an amount to be determined at the time of trial in excess of $20,000,000.00 for each plaintiff.

428.    Moreover, defendant County of San Diego and City of Escondido are

1   liable to plaintiffs via Cal. Gov't Code §§ 815.2 and 820 via *respondeat superior.*

2   429.   As a further proximate result of the Defendants' negligent conduct,

3   Plaintiff GUADALUPE CONEJO RAMIREZ has lost her family member and

4   suffered great financial, emotional and mental harm in the amount to be determined

5   at the time of trial.

6   430.   As a direct and proximate result of the actions and omissions of

7   defendants as complained of above, Plaintiffs suffered severe mental and

8   emotional distress, pain and suffering, and the loss of the love, comfort, society,

9   companionship with plaintiffs' Decedent JOSE RAMON CERVANTES CONEJO,

10  as well funeral and burial expenses, hospital and other special damages; all of said

11  injuries and damages to Plaintiffs totaling an amount to be proven at trial.

12  431.   As a direct and proximate result of the actions and omissions of

13  defendants, as complained of above, plaintiffs' decedent JOSE RAMON

14  CERVANTES CONEJO suffered severe pre-death pain and suffering, severe pre-

15  death mental and emotional injuries, pain and suffering, other general and special

16  damages, as well as his death, as well as the loss of his life (hedonic damages), as

17  well as lost wages / profits and other income that plaintiffs' decedent Jose Ramon

18  Cervantes Conejo would have earned / made / acquired during his lifetime, the

19  hedonic damages to Jose Ramon Cervantes Conejo caused by the loss of his life,

20  and other special damages; all of said injuries and damages to JOSE RAMON

21  CERVANTES CONEJO in an amount to be proven at trial in excess of

22  $20,000,0000.00.

FIRST AMENDED CONSOLIDATED COMPLAINT

## TWELFTH CAUSE OF ACTION
### Violation of Cal. Civ. Code § 52.1 – Bane Act Survival Claim
### By ESTATE OF JOSE RAMON CERVANTES CONEJO By and Through Its Successor-In-Interest Fabian Cervantes Garcia and MARITZA BENITEZ, as Successor-in-Interest to Decedent JOSE RAMON CERVANTES CONEJO, Against All Defendants[15]

432.   Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 431, above, as though set forth in full herein.

433.   Plaintiff brings the claims in this cause of action as survival claims permissible under California law, including Cal. Code of Civ. Proc. Section 377.30 *et. seq.*

434.  By their acts, omissions, customs, and policies, Defendants, each Defendant acting in concert/conspiracy, as described above, while JOSE RAMON CERVANTES CONEJO was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Jose Ramon Cervantes Conejo's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a.   The right to be free from objectively unreasonable treatment a and deliberate indifference to JOSE RAMON CERVANTES CONEJO's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b.   Plaintiff's Decedent's right to be free from the use of excessive force upon his person;

---

[15] See footnote 11, above as to why plaintiffs are inserting their state law claims against defendant County of San Diego and why Garcia/Ramirez plaintiffs are inserting state law claims against City of Escondido and its employee ESCONDIDO POLICE DEPARTMENT OFFICER DOE 36.

c.      Decedent's and Plaintiff's right to familial association as secured by the First, Fifth and/or Fourteenth Amendments.

d.      The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1;

e.      The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43; and

f.      The right to emergency medical care as required by California Government Code §845.6.

435.    Defendants' violations of plaintiffs' and decedent's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[16]

436.    Alternatively, separate from, and above and beyond, defendants' attempted interference, interference with, and violation of Jose Ramon Cervantes Conejo's rights as described above, Defendants violated Decedent's rights by the following conduct constituting threat, intimidation, or coercion:

a.      With deliberate indifference to JOSE RAMON CERVANTES CONEJO's serious medical needs, suffering, and risk of grave harm including death, depriving JOSE RAMON CERVANTES CONEJO of necessary, life-saving care for his medical needs;

b.      Subjecting JOSE RAMON CERVANTES CONEJO to ongoing

---

[16] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); see also, *Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following Cornell); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following Cornell).

violations of his rights to prompt care for his serious medical needs, causing immense and needless suffering, intimidation, coercion, and endangering his life and well-being;

c.      Choosing not to provide the required constant observation for inmates going through withdrawals;

d.      Choosing not to provide medically required low bunk to Decedent;

e.      Choosing not to provide medically indicated specialized housing for Decedent;

f.      Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as JOSE RAMON CERVANTES CONEJO would be subjected to threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

437.  The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of Decedent's rights, or to any legitimate and lawful jail or law enforcement activity.

438.  Further, all of defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

439.  Further, each defendant violated plaintiff's and decedent's rights with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

440.  NAPHCARE, INC.; NAPHCARE OF SAN DIEGO, LLC; AND DOES 31 through 35 are vicariously liable for the violation of rights by their employees and agents.

441.  As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiff's and Decedent's rights under the United States

and California Constitutions, Plaintiffs ESTATE OF JOSE RAMON CERVANTES CONEJO by and Through Its Successor-In-Interest, Fabian Cervantes Garcia and MARITZA BENITEZ, as successor-in-interest to JOSE RAMON CERVANTES CONEJO, sustained injuries and severe physical, mental and emotional pain, suffering and distress damages, and against each and every defendant is entitled to relief as set forth above, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs, attorneys' fees, treble damages and civil penalties, all in an amount in excess of $20,000,000.00.

### THIRTEENTH CAUSE OF ACTION
### MEDICAL NEGLIGENCE
**Under California State Law**
**By ESTATE OF JOSE RAMON CERVANTES CONEJO By and Through Its Successor-In-Interest Fabian Cervantes Garcia and MARITZA BENITEZ, as Successor-in-Interest to Decedent JOSE RAMON CERVANTES CONEJO, Against All Defendants**

442.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 441, inclusive, above, as if set forth in full herein.

443.   COUNTY, MATA, CASTLEBERRY, DAI, PREECHAR, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and DOES 1-35 had a duty to Jose Ramon Cervantes Conejo to act with ordinary care and prudence so as not to cause harm or injury to another.

444.   Said Defendants improperly, negligently, wrongfully, and recklessly failed to document or communicate JOSE RAMON CERVANTES CONEJO's serious medical conditions. They so negligently and carelessly examined, diagnosed, treated, failed to treat, and manage JOSE RAMON CERVANTES CONEJO's care so as to allow and cause the damages as alleged herein. The negligence and carelessness of Defendants consisted of their failure to use that degree of skill and care ordinarily used by healthcare professionals engaged in the

practice of their profession in the same or similar locality and under the same or similar circumstances.

445.    Defendants improperly, negligently, wrongfully, and recklessly failed to provide proper housing where JOSE RAMON CERVANTES CONEJO could be monitored, including failing to send him to a facility for a 72-hour treatment and evaluation of inebriates as required by Cal. Penal Code § 647(g).

446.    Defendants improperly, negligently, wrongfully, and recklessly failed to take appropriate action to monitor Jose Ramon Cervantes Conejo despite his obvious symptoms of being in serious medical distress.

447.    Defendants improperly, negligently, wrongfully, and recklessly failed to place Jose Ramon Cervantes Conejo in proper housing where he could be closely monitored and, on information and belief, failed to place him in a medically required low bunk.

448.    Defendants improperly, negligently, wrongfully, and recklessly delayed and failed to summon medical care to Jose Ramon Cervantes Conejo who was in obvious physical distress and in acute need of urgent medical care.

449.    All Defendants improperly, negligently, wrongfully, and recklessly failed to refrain from violating Plaintiffs' rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

450.    By engaging in the acts alleged herein, defendants failed to act with ordinary care and breached their duty of care owed to Jose Ramon Cervantes Conejo.

451.    Accordingly, defendants COUNTY, MATA, CASTLEBERRY, DAI, PREECHAR, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and DOES 1-35 breached their duty of due care that they owed to Jose Ramon Cervantes Conejo and thereby caused his death.

452.    Defendants COUNTY, MATA, CASTLEBERRY, DAI,

FIRST AMENDED CONSOLIDATED COMPLAINT

97

PREECHAR, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and DOES 1-35 failed to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical practitioners would use in the same or similar circumstances.

453.   Accordingly, the actions and omissions of defendants were a proximate cause of the death of Jose Ramon Cervantes Conejo, and make them liable to plaintiffs individually and as successor-in-interest to Jose Ramon Cervantes Conejo.

454.   As a direct and proximate result of the actions and omissions of Defendants COUNTY, MATA, CASTLEBERRY, DAI, PREECHAR, NAPHCARE, INC., NAPHCARE OF SAN DIEGO, LLC and DOES 1-35, as complained of above, plaintiffs suffered severe mental and emotional distress, pain and suffering, and the loss of the love, comfort, society, companionship with Jose Ramon Cervantes Conejo, as well funeral and burial expenses, hospital and other special damages; all of said injuries and damages to plaintiffs totaling an amount to be shown at trial.

455.   As a direct and proximate result of the actions and omissions of Defendants, as complained of above, plaintiffs' decedent Jose Ramon Cervantes Conejo suffered severe pre-death pain and suffering, severe pre-death mental and emotional injuries, pain and suffering, other general and special damages, as well as his death, as well as the loss of his life (hedonic damages), as well as lost wages / profits and other income that plaintiffs' decedent Jose Ramon Cervantes Conejo would have earned / made / acquired during his lifetime, the hedonic damages to CONEJO caused by the loss of Jose Ramon Cervantes Conejo's life, and other special damages; all of said injuries and damages to Jose Ramon Cervantes Conejo

totaling an amount to be shown at trial.

## FOURTEENTH CAUSE OF ACTION
### Cal. Gov't Code § 845.6
### Under California State Law
### By ESTATE OF JOSE RAMON CERVANTES CONEJO By and Through Its Successor-In-Interest Fabian Cervantes Garcia and MARITZA BENITEZ, as Successor-in-Interest to Decedent JOSE RAMON CERVANTES CONEJO, Against All Defendants[17]

456.   Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 455, inclusive, above, as if set forth in full herein.

457.  As shown above, plaintiffs' decedent Jose Ramon Cervantes Conejo was in medical extremis when he was brought into the VDF Jail on March 28, 2024 from extreme alcohol intoxication.

458.   As shown above, plaintiffs' decedent Jose Ramon Cervantes Conejo had fallen in the Medical Clearance for Booking / Booking area of the VDF Jail directly on his head, resulting in skull fractures to his face/head.

459.  As shown above, it was clear to defendants that plaintiffs' decedent Jose Ramon Cervantes Conejo was experiencing severe alcohol withdrawal at the VDF jail, was shaking from said withdrawals, had fallen off of a bench onto his head from his level of intoxication, and had apparently fallen from where he was housed at the VDF Jail, probably from a bunk bed and/or sitting and/or standing position.

460.  Also as shown above, plaintiffs' decedent was vomiting, stumbling, incoherent and slurred his speech.

461.  Also as shown above, plaintiffs' decedent's head and face was filled

---

[17] See footnote 11, above as to why plaintiffs are inserting their state law claims against defendant County of San Diego.

with blood from his fall(s) at the VDF Jail.

462.   Notwithstanding the above and foregoing, defendants failed to render or to obtain emergency medical treatment and care for plaintiffs' decedent, in violation of Cal. Gov't Code § 845.6.

463.   Moreover, defendant County of San Diego is liable to plaintiffs via Cal. Gov't Code §§ 815.2 and 820 via respondeat superior.

464.   As a direct and proximate result of the actions and omissions of Defendants, as complained of above, plaintiffs' decedent Jose Ramon Cervantes Conejo suffered severe pre-death pain and suffering, severe pre-death mental and emotional injuries, pain and suffering, other general and special damages, as well as his death, as well as the loss of his life (hedonic damages), as well as lost wages / profits and other income that plaintiffs' decedent Jose Ramon Cervantes Conejo would have earned / made / acquired during his lifetime, the hedonic damages to CONEJO caused by the loss of Jose Ramon Cervantes Conejo's life, and other special damages; all of said injuries and damages to Jose Ramon Cervantes Conejo totaling an amount to be shown at trial in excess of $20,000,000.00.

465.  In addition, the actions of defendants were done maliciously and oppressively, sufficient for an award of punitive damages against defendants, save for defendants CITY and COUNTY, in an amount to be proven at trial in excess of $20,000,000.00 for each plaintiff.

**WHEREFORE**, plaintiffs pray for judgment as follows:

a) For a judgment for all plaintiffs against all defendants for compensatory damages in an amount in excess of $20,000,000.00 for each plaintiff;

b) For a judgment for all plaintiffs against all defendants, save defendant City of Escondido and County of San Diego, for punitive damages in an amount in excess of $20,000,000.00 for

each plaintiff;

c) For an award of reasonable attorney's fees and costs;

d) For a trial by jury; and

e) For such other and further relief as this honorable court deems just and equitable.

Respectfully Submitted,

s/ *Maurizio Mangini*

Dated:  February 19, 2026

Attorney for Plaintiffs THE ESTATE OF JOSE RAMON CERVANTES CONEJO By and Through Its Substituted Successor-In-Interest, FABIAN CERVANTES GARCIA; and Plaintiff GUADALUPE CONEJO RAMIREZ

s/ *Suzanne Skolnick*

Dated:  February 19, 2026

Attorney for Plaintiffs THE ESTATE OF JOSE RAMON CERVANTES CONEJO By and Through Its Substituted Successor-In-Interest, FABIAN CERVANTES GARCIA; and Plaintiff GUADALUPE CONEJO RAMIREZ

Dated: February 19, 2026    */S/ Gregory Peacock*

GREGORY PEACOCK, Attorney for Plaintiff Maritza Benitez, individually and as successor-in-interest to Decedent Jose Ramon Cervantes Conejo, and Jose Alberto Quintero

Dated: February 19, 2026    */S/ Jerry L. Steering*

JERRY L. STEERING, Attorney for Plaintiff Maritza Benitez, individually and successor-in-interest to Decedent Jose Ramon Cervantes Conejo, and Jose Alberto Quintero

EXHIBIT 1

Docusign Envelope ID: E8BF3AF0-6E13-4F46-8963-8EF6FAD3D329

**Affidavit of Heirship and Declaration re: Successor-in-interest to the**

**Estate of Jose Ramon Cervantes Conejo**

I, Fabian Cervantes García, certify and attest to the following:

1. I am the adult son of Jose Ramon Cervantes Conejo, whose date of birth was October 23, 1989.), and who is now deceased (hereafter "decedent").

2. Jose Ramon Cervantes Conejo died on April 12, 2024, in Escondido, California. A copy of Jose Ramon Cervantes Conejo's death certificate is attached hereto as <u>Exhibit A</u>.

3. No proceeding is now pending in California for administration of Jose Ramon Cervantes Conejo's estate.

4. I am an heir at law of decedent.

5. I, am decedent's successors in interest as defined in Section 377.11 of the California Code of Civil Procedure, and I succeed to the decedent's interest in any action or proceeding pertaining to decedent's death.

6. No other person has a superior right to be substituted for the decedent in any action or proceeding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signed this _____ day of 7/30/2025 , 2025.

Signature: F C G _____

Printed Name: Fabian Cervantes García

# EXHIBIT A

**CERTIFICATION OF VITAL RECORD**

# COUNTY OF SAN DIEGO

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS. 11 (REV. 1/91)

STATE FILE NUMBER     3202437006968     LOCAL REGISTRATION NUMBER

| 1. NAME OF DECEDENT - FIRST (Given) | 2. MIDDLE | 3. LAST (Family) | | | |
|---|---|---|---|---|---|
| JOSE | RAMON | CERVANTES CONEJO | | | |
| AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST) | | 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR / IF UNDER 24 HOURS | 6. SEX |
| | | 10/23/1980 | 43 | Months / Days / Hours / Minutes | M |
| 9. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SRDP (at time of Death) | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
| GTO, MX | NONE | YES  [X] NO  UNK | DIVORCED | 04/12/2024 | 1851 |
| 13. EDUCATION – Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? | | 16. DECEDENT'S RACE – Up to 3 races may be listed | | |
| HS GRADUATE | [X] YES  MEXICAN  NO | | MEXICAN | | |
| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | | 18. KIND OF BUSINESS OR INDUSTRY | | 19. YEARS IN OCCUPATION | |
| MAINTENANCE MAN | | INDUSTRIAL | | 9 | |

| 20. DECEDENT'S RESIDENCE (Street and number, or location) | | | | | |
|---|---|---|---|---|---|
| 874 N. CEDAR STREET | | | | | |
| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY | |
| ESCONDIDO | SAN DIEGO | 92026 | 16 | CA | |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state and zip) |
|---|---|
| GUADALUPE CONEJO RAMIREZ, MOTHER | PRIVADA SALVA TIERRA #324, SALAMANCA, GTO, MX 36780 |

| 28. NAME OF SURVIVING SPOUSE/SRDP – FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) | | |
|---|---|---|---|---|
| | | | | |
| 31. NAME OF FATHER/PARENT – FIRST | 32. MIDDLE | 33. LAST | | 34. BIRTH STATE |
| JUAN | | CERVANTES FLORES | | GTO, MX |
| 35. NAME OF MOTHER/PARENT – FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | | 38. BIRTH STATE |
| GUADALUPE | | CONEJO RAMIREZ | | GTO, MX |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION  PANTEON LA CRUZ | | |
|---|---|---|---|
| 04/26/2024 | BLVD VALLE DE SANTIAGO, BENITO JUAREZ, SALAMANCA, GTO, MX 36786 | | |
| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | | 43. LICENSE NUMBER |
| CREMATE/TRANSIT/BURIAL | ▶ THOMAS HENDERSON | | EMB8829 |
| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
| ALHISER COMER MORTUARY | FD297 | ▶ WILMA WOOTEN MD | 04/18/2024 |

| 101. PLACE OF DEATH | | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE | |
|---|---|---|---|---|
| PALOMAR MEDICAL CENTER | | [X] IP  ER/OP  DOA | Hospice Home/LTC  Decedent's Home  Other | |
| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | | 106. CITY | |
| SAN DIEGO | 2185 CITRACADO PKWY | | ESCONDIDO | |

| 107. CAUSE OF DEATH | | Enter the chain of events — diseases, injuries, or complications — that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | (A) PENDING | | (A?) | [X] YES |
| | | | | REFERRAL NUMBER |
| Sequentially, list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | (B) | | (B?) | 24-01136 |
| | (C) | | (C?) | *09. BIOPSY PERFORMED? |
| | | | | YES  [X] NO |
| | | | | *0. AUTOPSY PERFORMED? |
| | (D) | | (D?) | [X] YES  NO |
| | | | | 111. USED IN DETERMINING CAUSE? |
| | | | | [X] YES  NO |
| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 | | | | |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | | 113a. DECEDENT PREGNANT IN LAST YEAR? | |
|---|---|---|---|
| UNK | | YES  [X] NO  UNK | |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since / Decedent Last Seen Alive | | | |
| (A) mm/dd/ccyy   (B) mm/dd/ccyy | ▶ | | |
| | 15B. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | | |

| 118. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 119. MANNER OF DEATH | | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|---|---|
| | Natural  Accident  Homicide  Suicide  [X] Pending Investigation  Could not be determined | | YES  NO  UNK | | |
| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) | | | | | |
| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) | | | | | |
| 125. LOCATION OF INJURY (Street and number, or location, and city and zip) | | | | | |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ▶ C SCHOPPE | 04/16/2024 | C SCHOPPE, DME |

| STATE REGISTRAR | A | B | C | D | E | | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|

County of San Diego —Health & Human Services Agency — 5560 Overland Avenue. This is to certify that, if bearing the OFFICIAL SEAL OF THE STATE OF CALIFORNIA, the OFFICIAL SEAL OF SAN DIEGO COUNTY AND THEIR DEPARTMENT OF HEALTH SERVICES EMBOSSED SEAL, this is a true copy of the ORIGINAL DOCUMENT FILED. This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

DATE ISSUED:  4/25/2024



WILMA J. WOOTEN, M.D., M.P.H.
REGISTRAR OF VITAL RECORDS
County of San Diego



A004422064

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE